JOSEPH W. COTCHETT, Cal. Bar No. 36324
THOMAS E. LOESER, Cal. Bar No. 202724
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcom Road
Burlingame, CA 94010
Tel: 650-697-6000
Fax: 650-697-0577
jcotchett@cpmlegal.com
tloeser@cpmlegal.com

-AND-

KARIN B. SWOPE (*pro hac vice*)
JACOB M. ALHADEFF (*pro hac vice*)
**COTCHETT, PITRE & McCARTHY LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272
Facsimile: (206) 299-4184
kswope@cpmlegal.com
jalhadeff@cpmlegal.com

Mark S. Reich
Michael N. Pollack
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
mreich@zlk.com
mpollack@zlk.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB BURNS, JONATHAN MOULTON, AND STEVEN ZOU, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NZXT, INC. & FRAGILE, INC.<br><br>Defendants. | Case No. 4:25-cv-06604-JST<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**JURY TRIAL DEMANDED**<br><br>Judge Jon S. Tigar<br>Courtroom 6, 2nd Floor<br>Hearing Date: June 18, 2026<br>Hearing Time: 2:00 pm |

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY.................................................................. 3

    A.    Factual Background ............................................................................................... 3

    B.    Procedural History ................................................................................................ 3

SUMMARY OF KEY SETTLEMENT TERMS ...................................................................... 4

    A.    The Settlement Class............................................................................................. 4

    B.    Benefits to Settlement Class Members Who Do Not Opt-Out of the Settlement .......... 4

        1.    Settlement Class Consideration ................................................................... 4

            a.    Settlement Non-Cash Consideration ................................................. 5

        2.    Changes in Business Practices ..................................................................... 6

        3.    Determination and Processing of Claims..................................................... 6

        4.    Objections and Exclusions........................................................................... 7

    C.    Release of Claims ................................................................................................. 8

    D.    Notice of the Settlement and Cost of Administration........................................... 8

    E.    Attorneys' Fees ..................................................................................................... 9

ARGUMENT ........................................................................................................................... 9

    A.    The Court Should Preliminarily Approve the Settlement ..................................... 9

        1.    The Settlement Is A Substantively Fair, Reasonable, and Adequate Resolution of the Flex Program Litigation................................................................................. 10

            a.    Plaintiffs' case is strong; thus the substantial recovery is warranted. ...................... 11

            b.    There would be substantial risk, expense and complexity in continuing the litigation, which could last for years and would imperil the Settlement. ................................ 11

            c.    The Settlement Class carries material certification risk. ........................................ 12

            d.    Proposed Class Counsel Reviewed Discovery Relevant to the Flex Program......... 13

            e.    The settlement is by all measures substantial and adequately reflects the magnitude of harm to the Settlement Class.............................................................................. 13

            f.    In light of the unique facts and circumstances of this case, that it is being settled at an early stage of the case is not a concern.................................................................. 14

            g.    Plaintiffs' counsel and Defendants' counsel are highly experienced class action litigators and they fully support the Settlement............................................................ 14

            h.    The Settlement Is the Result of Arm's-Length Negotiations. ................................. 15

            i.    Proposed Attorneys' Fees and Cost are Reasonable .............................................. 16

            j.    Discussion of The Settlement Class, Release, and Absence of Under the Court's Procedural Guidance .............................................................................................. 17

B.      The Court Should Certify the Settlement Class...........................................................17

   1.      The Proposed Class is Ascertainable. ...........................................................18

   2.      Each of the Rule 23(a) Requirements Are Met............................................18

      a.      The Class is so numerous that joinder is impracticable. ...........................................19

      b.      The Commonality Requirement Is Satisfied. .............................................19

      c.      The Class Representative's claims are typical of those of other Class Members. ...19

      d.      The Class Representative and its counsel adequately represent the interests of the Class. ...................................................................................20

   3.      The Requirements of Rule 23(b)(3) Are Met. .............................................21

      a.      Common issues of law and fact predominate...........................................21

      b.      Individual Differences Do Not Defeat Classwide Resolution..............................21

      c.      The class action mechanism is superior to any other methods of adjudication. ......22

C.      The Proposed Manner and Form of Notice Satisfies Rule 23 .........................................23

D.      The Proposed Schedule for Dissemination of Notice and Final Approval......................24

E.      The Proposed Settlement Administrator Proposed Procedures Are in the Best Interests of the Class ....................................................................................25

CONCLUSION...................................................................................................26

ii

**TABLE OF AUTHORITIES**

**Cases**

*Agne v. Papa John's Int'l, Inc.*,
    286 F.R.D. 559 (W.D. Wash. 2012)....................................................................................18

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ...........................................................................................................18

*Bickley v. Schneider Nat'l, Inc.*,
    No. 08-cv-05806-JSW, 2016 WL 4157355 (N.D. Cal. Apr. 25, 2016) ...................................10

*Brown v. Consumer Law Assocs., LLC*,
    283 F.R.D. 602 (E.D. Wash. 2012)....................................................................................19

*Browning v. Yahoo! Inc.*,
    No. C04–01463 HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ...................................13

*Carter v. B. Riley Sec., Inc.*,
    C.A. No. 2024-0605 (Del. Ch.).........................................................................................25

*Churchill Vill., L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004)........................................................................................15, 23

*Collins v. Cargill Meat Solutions Corp.*,
    274 F.R.D. 294 (E.D. Cal. 2011).........................................................................................9

*Costelo v. Chertoff*,
    258 F.R.D. 600 (C.D. Cal. 2009) ......................................................................................20

*Custom Led, LLC v. eBay, Inc.*,
    No. 12-CV-00350-JST, 2013 WL 4552789 (N.D. Cal. Aug. 27, 2013) (Tigar, J.) .................22

*Doe v. Am. Med. Response*,
    No. 23-CIV-02842 (Cal. Super. Ct., San Mateo Cnty.).........................................................25

*Edge v. Tupperware Brands Corp.*,
    No. 6:22-cv-01518 (M.D. Fla.) .........................................................................................25

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011)........................................................................................19, 20

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981) .......................................15

*Esomonu v. Omnicare, Inc.*,
    No. 15-CV-02003-HSG, 2019 WL 499750 (N.D. Cal. Feb. 8, 2019) ....................................12

*Evans v. IAC/Interactive Corp.*,
  244 F.R.D. 568 (C.D. Cal. 2007) ...................................................................................... 18

*Fraley v. Batman*,
  638 F. App'x 594 (9th Cir. 2016) ..................................................................................... 12

*Fraley v. Facebook, Inc.*,
  No. C 11-1726 RS, 2012 WL 5838198 (N.D. Cal. Aug. 17, 2012) ....................................... 10

*Galvan v. KDI Distrib.*,
  No. SACV 08-0999-JVS ANX, 2011 WL 5116585 (C.D. Cal. Oct. 25, 2011)................. 18, 20

*Glass v. UBS Fin. Servs., Inc.*,
  No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. 2007)..................................................... 13

*Gonzales v. Arrow Financial Services, LLC*,
  660 F.3d 1055 (9th Cir. 2011)............................................................................................ 17

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)....................................................................................... passim

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992).............................................................................................. 19

*Hendricks v. Starkist Co*,
  No.13-cv-00729-HSG, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016)..................................... 8

*Hubbard v. Henkel Corp.*,
  2021 No. 19-CV-04346-JST, 2021 WL 12171868 (N.D. Cal. Feb. 25, 2021) ........................ 12

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ....................................................................................... 13

*In re Beef Indus. Antitrust Litig.*,
  607 F.2d 167 (5th Cir. 1979)............................................................................................... 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011)............................................................................................... 16

*In re ConnectOnCall.com Data Breach Litig.*,
  No. 2:24-cv-08790 (E.D.N.Y.)............................................................................................ 25

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000).............................................................................................. 16

*In re Netflix Privacy Litig.*,
  No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)............................. 13

*In re Northrop Gruman Corp. ERISA Litig.*,
  No. CV 06-06213 MMM JCX, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011)......................18

*In re Online DVD Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015)..................................................................................................24

*In re Supernova Partners Acquisition Co.*,
  C.A. No. 2024-0887-PAF (Del. Ch.) ......................................................................................25

*In re Tableware Antitrust Litig.*,
  484 F.Supp.2d 1078 (N.D. Cal. 2007) ...................................................................................10

*Lane v. Facebook, Inc.,*
  696 F.3d 811 (9th Cir. 2012) .................................................................................................24

*McCants v. Sunlight*,
  C.A. No. 2023-0694-PAF (Del. Ch.) ......................................................................................25

Meyer, et al. v. Weil, et al.,
  No. 24-C-23-003628 (Cir. Ct. Balt. City) ..............................................................................25

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...........................................................................................15

*Officers for Just*
  688 F.2d 615 (9th Cir. 1982)............................................................................................ 10, 15

*Pampena v. Musk*,
  No. 3:22-cv-05937 (N.D. Cal.) ..............................................................................................25

*Pitkin v. State Farm Gen. Ins. Co.*,
  No. 3:23-cv-00924 (N.D. Cal.) ..............................................................................................25

*Satchell v. Fed. Exp. Corp.*,
  Nos. C03–2659 SI, C 03–2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)................16

*Simpson v. Fireman's*....................................................................................................................20

*Smith v. Univ. of Wash. Law Sch.*,
  2 F. Supp. 2d 1324 (W.D. Wash. 1998) .................................................................................19

*Teuza v. Lindon*,
  C.A. No. 2022-0130-SG (Del. Ch.) ........................................................................................25

*Thompson v. John Muir Health*,
  No. C22-02125 (Cal. Super. Ct., Contra Costa Cnty.)...........................................................25

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)................................................................................................16

*Z.D. v. Grp. Health Coop.*,
  No. C11–1119RSL, 2012 WL 1977962 (W.D. Wash. June 1, 2012) .......................................19

*Zepeda v. PayPal, Inc.*,
  No. C 10-2500 SBA, 2015 WL 6746913 (N.D. Cal. Nov. 5, 2015) .........................................10

**Rules**

Fed. R. Civ. P. 23(a) ...........................................................................................................18

Fed. R. Civ. P. 23(b)(3)..................................................................................................18, 21

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................23

Fed. R. Civ. P. 23(e)(1)......................................................................................................23

**INTRODUCTION**

Plaintiffs Jacob Burns, Jonathan Moulton, and Steven Zou respectfully move for preliminary approval of the proposed Settlement Agreement and Release (the "Settlement," "SA" or "Settlement Agreement") reached with Defendants NZXT, Inc. ("NZXT") and Fragile, Inc. ("Fragile") (collectively, "Defendants"). Plaintiffs also seek provisional certification of the proposed settlement class, approval of the form and method of class notice, and entry of an order setting a schedule for final approval of the Settlement.

The proposed Settlement resolves this nationwide consumer class action arising from Defendants' marketing and administration of the NZXT Flex Program ("Flex Program"), a subscription-based program through which consumers obtained gaming computers from Defendants rather than purchasing them outright. ¶¶ 24–25.[1] NZXT and Fragile jointly developed and operated the Flex Program (¶ 25), with NZXT supplying the hardware and online marketing and Fragile handling customer service, billing, and collections. ¶¶ 25, 113.

The "Settlement Class is defined as all persons in the United States who subscribe, or subscribed to, the NZXT Flex Program during the Class Period. A "Settlement Class Member" is any member of the Settlement Class who does not validly or timely request exclusion from the Settlement Class. The Settlement provides total consideration valued at approximately $3,450,000, consisting of both cash and non-cash benefits to Settlement Class Members (the "Settlement Class Consideration"). The cash component of the Settlement includes a non-reversionary fund of $1,450,000, from which eligible Settlement Class Members may obtain direct monetary payments (the "Settlement Cash Fund"). The Settlement provides significant non-cash relief valued at approximately $2,139,246 (the "Settlement Non-Cash Consideration") including debt forgiveness of approximately $923,117 (the "Debt Forgiveness") and PC retention valued at approximately $1,216,129 (the "PC Retention") allowing qualifying Settlement Class Members to retain their computers without further payment. Importantly, certain benefits, notably Debt Forgiveness, will be provided automatically without the need for a claim submission,

---

[1] "¶ xx" or "¶¶ xx" refers to the designated paragraph(s) of the Complaint in this matter.

1

ensuring that affected consumers receive meaningful relief with minimal administrative burden.

The Settlement also provides prospective business practice changes through at least December 31, 2027. Defendants will maintain enhanced disclosures clarifying that the Flex Program is not rent-to-own, ensure accurate specifications, and implement measures addressing ownership-related advertising, product naming, and data-transfer for upgrades disclosures.

The proposed Settlement was reached after extensive arm's-length negotiations between experienced and informed counsel, including a full-day mediation before Professor Eric Green on November 13, 2025, followed by continued negotiations over several months. It does not contain any apparent deficiencies and falls within the range of possible approval.

The proposed Settlement Class meets the requirements of Rule 23(a) for provisional certification. With 19,322 Settlement Class Members, the numerosity requirement is met. There are ample common questions of law and fact that predominate over any individual issues. The Settlement Class representatives, Jacob Burns, Jonathan Moulton, and Steven Zou, bring claims identical to, and thus typical of, all members of the Settlement Class. Plaintiffs' interests are directly aligned with those of the Settlement Class. They have diligently pursued this action on behalf of all Settlement Class Members. Plaintiffs' counsel are highly experienced and unquestionably qualified to serve as Class Counsel for the Settlement Class.

The requirements of Rule 23(b)(3) are also met in this case. The common issues of law and fact predominate over any individualized issues; and a class action is the superior method of resolving these common claims for the 19,322 similarly situated Settlement Class Members. For these reasons, the Settlement Class should be provisionally certified.

The proposed Class Notice, attached to the Loeser Declaration, will be distributed primarily by email and supplemented by mailed notice where necessary. It directs Settlement Class Members to a dedicated settlement website and toll-free number, explains their rights and options in plain English, and states the relief available if they do not opt out. All of this constitutes notice in the reasonable manner required under Rule 23(e).

Finally, Class Counsel propose a detailed schedule providing ample opportunity for

2

Settlement Class Members to reach a decision on the Settlement, opt-out, or object, if they see fit, and for the Court to reach an informed decision on final approval of the proposed Settlement Agreement. Accordingly, Plaintiff respectfully requests an order: (1) preliminarily approving the proposed Settlement Agreement; (2) provisionally certifying the proposed Settlement Class; (3) approving and directing notice to the Settlement Class; and (4) scheduling a final fairness hearing.

## BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

This action arises from Defendants' marketing and administration of the NZXT Flex Program, a subscription-based program through which consumers obtained gaming computers rather than purchasing them outright. ¶¶ 24–25. NZXT and Fragile jointly developed and operated the Flex Program, with NZXT responsible for hardware, branding, and marketing, and Fragile responsible for customer service, billing, and collections. ¶¶ 25, 113.

Plaintiffs allege that Defendants marketed the Flex Program through misrepresentations and omissions concerning the nature of the subscription, consumers' ownership rights, and the specifications and performance of the computers provided. ¶¶ 4, 51, 75. Plaintiffs allege that Defendants advertised the program using terms such as "no contracts" and "no commitment," while failing to disclose material limitations and contractual obligations, and in some instances provided computers with specifications that differed from those represented. ¶¶ 6, 56, 60, 63, 67, 73. Plaintiffs further allege that the distinct roles of NZXT and Fragile in the Flex Program were not disclosed to consumers, and that Defendants' conduct resulted in harm to consumers nationwide. ¶¶ 98, 115, 118, 125.

### B. Procedural History

On August 5, 2025, Plaintiffs filed this putative class action against Defendants asserting federal and state consumer protection and related claims arising from the NZXT Flex Program. Plaintiffs served Fragile with the Complaint on August 14, 2025 (ECF 15) and served NZXT on September 2, 2025 (ECF 30).

On November 13, 2025, the Parties participated in a full-day mediation before Professor

3

Eric Green and reached an agreement in principle on the material terms of a settlement. In advance of and following that mediation, the Parties exchanged information and Plaintiffs' counsel obtained and reviewed documents and data concerning the Flex Program sufficient to evaluate the claims and the proposed resolution. *See* Loeser Decl. ¶ 16. The Parties thereafter negotiated and finalized the Settlement Agreement, which was executed on April 7, 2026. Defendants have not responded to the Complaint, and no litigation class has been certified.

**SUMMARY OF KEY SETTLEMENT TERMS**

### A. The Settlement Class

The proposed Settlement Class is the same class defined in the Settlement Agreement:

All persons who reside in the United States, who currently subscribe, or previously subscribed to, the NZXT Flex Program to obtain a PC. The Settlement Class excludes Fragile; NZXT; any entity in which Fragile or NZXT has a controlling interest; Fragile's and NZXT's directors, officers, and employees; and Fragile's and NZXT's legal representatives, successors, and assigns. Also excluded from the Settlement Class are all judicial officers assigned to this case as well as their staff and immediate families. The Class Period shall be October 19, 2023, to March 30, 2026.

### B. Benefits to Settlement Class Members Who Do Not Opt-Out of the Settlement

#### 1. Settlement Class Consideration

Defendants provide a total of $3,450,000.00 in monetary value to Settlement Class Members who do not opt-out of the Settlement Agreement. The Settlement Class Consideration includes the Settlement Cash Fund of $1,450,000, and Settlement Non-Cash Consideration valued at approximately $2,139,246.94, consisting of Debt Forgiveness and PC Retention benefits.

Within 14 days after an order granting preliminary approval of the Settlement Agreement, Defendants will transfer $60,000 into an account established by Epiq Global, an independent settlement administrator (the "Settlement Administrator"). Within 45 days after an order granting preliminary approval, Defendants will transfer the remainder of the Settlement Cash Fund into the Settlement Administrator's account. The Settlement Administrator will hold the Settlement Cash Fund in an interest-bearing account and administer it, including as a qualified settlement fund under Treasury Regulation § 1.468B-1 et seq. SA § A.2.

The Settlement Cash Fund will be applied as follows: (1) to pay the costs of Notice and Settlement administration; (2) to pay any approved attorneys' fees, expenses, and service awards; and (3) payments to Settlement Class Members from the Settlement Cash Fund. No portion of the Settlement Cash Fund will revert to Defendants. SA § A.4.

Cash payments will be distributed from the Settlement Cash Fund only to Settlement Class Members who submit a valid Claim Form (by mail or online) (each, a "Claimant"). Claim Forms will be pre-populated with Claimant information, including name, PC model, subscription date, contact information, whether the claimant is eligible for cash or PC retention, and attestations options required under Sections B.4-5 of the Settlement Agreement. SA § B.2. Eligible claimants must confirm and update their contact information and select a payment method. *Id*.

Cash payments will be available to Settlement Class Members who are not eligible for Debt Forgiveness (or whose Debt Forgiveness is less than $500) and who do not elect PC Retention. SA § B.4. To qualify for cash relief, claimants must attest, in good faith, that they subscribed to the Flex Program based on either (1) advertising or disclosures implying ownership, or (2) product specifications or performance metrics that were important to their decision and that they believe were not reflected in the PC they received. *Id.*

### a. Settlement Non-Cash Consideration

The Settlement Non-Cash Consideration will be offered to eligible Settlement Class Members as follows: (1) Settlement Class Members who are more than 90 days delinquent on payments are eligible to receive up to $5,000 in Debt Forgiveness. The total value of Debt Forgiveness is $923,117, which will be automatically provided to eligible Settlement Class Members, as set forth in Sections B.7–10. (2) The total value of PCs that will be provided to eligible Settlement Class Members who select PC Retention, as set forth in Section C.5 of the Settlement Agreement, is approximately $1,216,129. The total value of the PCs reflects the estimated discounted current value of the PCs to the Settlement Class Members. SA § A.6.

These forms of Non-Cash Consideration provide direct economic value to Settlement Class Members. Debt Forgiveness eliminates outstanding financial obligations that would otherwise be

subject to collection, and PC Retention allows eligible Settlement Class Members to own their PC free and clear. These benefits are provided automatically or through a streamlined process, ensuring that a substantial portion of the Settlement value reaches Settlement Class Members.

Settlement Class Members who were more than 90 days delinquent as of March 30, 2026, and/or who elect the PC Retention option, are eligible for Debt Forgiveness. SA § B.7-8. Settlement Class Members who meet the criteria for Debt Forgiveness will have Debt Forgiveness applied automatically unless they exclude themselves from the Settlement. *Id*. Eligible Settlement Class Members will receive notice informing them of their eligibility and providing access to view the amount of debt forgiveness they will receive. SA § B.10.

Settlement Class Members are eligible for PC Retention if (i) their accounts are more than 90 days delinquent as of March 30, 2026 and they signed up for the NZXT Flex Program between October 29, 2024 and June 1, 2025; or (ii) they entered into NZXT Flex subscriptions on or before December 31, 2023 and have not received an upgraded PC; and (iii) they attest that they viewed disclosures or advertisements implying ownership or an ownership interest in the NZXT Flex PC and that these representations were important to their decision to subscribe. SA § B.5. Settlement Class Members eligible for PC Retention will have the option to elect either a cash payment or PC Retention, along with making the attestations required for each form of relief. SA § B.6.

### 2. Changes in Business Practices

In addition to the Settlement Class Consideration, Defendants will continue to implement or maintain changes to their marketing and disclosure practices, including clarifying that the Flex Program is not rent-to-own, ensuring accurate product specifications, and modifying advertising and customer disclosures. See SA § A.8. Fragile and NZXT will bear the costs associated with these business practice changes separate and apart from other Settlement Agreement benefits. *Id*.

### 3. Determination and Processing of Claims

The Settlement Administrator will review all claims to determine their validity and will reject any claim that does not materially comply with the Claim Form instructions, is not submitted by a Settlement Class Member, or is duplicative or fraudulent. If a Claim Form contains

curable deficiencies, the Settlement Administrator will notify the claimant and provide 21 days to cure. SA § C.1. The Settlement Cash Fund will be distributed according to the Plan of Allocation. Settlement Class Members will receive payment either by electronic transfer if valid bank information is provided, or by physical check if electronic payment is not available or if the Settlement Class Member elects to receive a check. SA § C.2-3. For Settlement Class Members eligible for a cash payment, payments will be transmitted within 30 days after the Effective Date. For Settlement Class Members eligible for Debt Forgiveness or PC Retention, written confirmation reflecting forgiveness of Covered Debt or transfer of ownership of the NZXT Flex PC will be transmitted within 30 days after the Effective Date. SA § C.4. Uncashed checks or failed ACH transfers remaining after 90 days will be used to pay reasonable settlement administration costs, and under no circumstances will the Settlement Cash Fund revert to Defendants. Any remaining unclaimed funds after final distribution will be paid pro rata to eligible Settlement Class Members. SA § C.6-7.

### 4. Objections and Exclusions

Any Settlement Class Member may object to the Settlement, the requested attorneys' fees and expenses, or the requested service awards by submitting a written objection to the Court by the deadline. SA § E.1-2. Objections may be submitted through ECF or by U.S. mail, and must include sufficient information to verify class membership, state the grounds for the objection, and be signed by the objector. SA § E.3. Settlement Class Members who do not timely object will be deemed to have waived any objection. SA § E.5. Any objector may appear at the Final Approval Hearing if they include a Notice of Intention to Appear in their written objection. SA § E.6.

The Settlement Notices will advise Settlement Class Members of their right to exclude themselves from the Settlement. SA § F.1. To request exclusion, a Settlement Class Member must timely submit a written request through the Settlement Website portal or by U.S. mail to the Settlement Administrator, including the Settlement Class Member's name and contact information, a clear request to opt out, and a personal signature and date. Exclusion requests must be submitted or postmarked by the Objection and Exclusion Deadline. SA § E.2. Settlement Class

Members who validly exclude themselves will not be bound by the Settlement, will not be eligible to receive Settlement benefits, and may not object. If the number of timely and valid exclusions exceeds a confidential threshold, Defendants may elect to terminate the Settlement. SA § E.5.

### C. Release of Claims

If the Settlement becomes final, Named Plaintiffs and Settlement Class Members will release and discharge NZXT and Fragile from claims, appropriately limited to claims arising from the same factual predicate as those alleged in the Complaint.[2] SA § I.1. This release includes claims that the Releasing Parties may not currently be aware of, and the Parties expressly waive all rights under California Civil Code § 1542 and similar laws in other jurisdictions. SA § I.2. The release remains effective even if additional or different facts are later discovered. SA § I.4. All Settlement Payments are final and binding, and no Settlement Class Member may assert any claim against Defendants, their counsel, or the Settlement Administrator regarding the Settlement Agreement, the Final Approval Order, the Final Judgment, or order(s) of the Court. SA § I.6.

### D. Notice of the Settlement and Cost of Administration

Notice and administration of the Settlement Agreement will be performed by Epiq Global, subject to Court approval, and paid from the Settlement Cash Fund. SA § G.1. The Settlement Administrator will: prepare and distribute the Summary and Full Class Notices; maintain the Settlement Website; field inquiries; receive and process claims; determine eligibility for cash payments, Debt Forgiveness, and PC Retention; track opt-outs and objections; make distributions to Settlement Class Members; and perform related tax reporting and recordkeeping. SA § G.2. Defendants will provide the Settlement Administrator with Settlement Class Member data, including contact information, subscription details, and PC information, to enable accurate administration. SA § G.3. The cost of administration is expected not to exceed $60,000, with any reasonable unanticipated costs payable from the Settlement Cash Fund. SA § G.6.

Notice will be provided via email to all Settlement Class Members with valid email

---

[2] *Hendricks v. Starkist Co*, 2016 WL 5462423, at *4, 8 (N.D. Cal. Sept. 29, 2016) (approving class settlement; scope of the release was limited to "the factual predicate in the operative complaint").

8

address, with mailed Postcard Notice for members without valid emails or whose emails bounce. *SA* § G.4. The Settlement Administrator will maintain a Settlement Website with the Full Class Notice, the Settlement Agreement, the Complaint, the Preliminary Approval Order, motions, FAQs, and instructions for submitting claims, objections, or requests for exclusion, and will also establish a toll-free number for inquiries. SA § G.5. The Settlement Class Members may request a paper copy of the Full Class Notice and submit Claim Forms electronically or by mail. *Id*.

### E. Attorneys' Fees

Class Counsel may apply to the Court for reasonable attorneys' fees and expenses, which the Settlement Administrator will pay if approved by the Court. The parties have not agreed on the amount of attorneys' fees and expenses that Class Counsel will seek. The motion for attorneys' fees and expenses will be filed at least 20 days before the Objection and Exclusion Deadline and posted on the Settlement Website within three days of filing. SA § H.2. Defendants will have no liability for any additional fees or expenses of Named Plaintiffs or Settlement Class Members, or for any fees or expenses beyond those approved by the Court. SA § H. 4.

Class Counsel will apply to the Court for a Service Award of up to $2,500 each for Named Plaintiffs in recognition of their time and effort on behalf of the Settlement Class. The Service Awards are not a measure of damages. Defendants may object to the request, and any Court-approved Service Awards will be paid from the Settlement Cash Fund. SA § H.1.

### ARGUMENT

### A. The Court Should Preliminarily Approve the Settlement

Under Federal Rule of Civil Procedure 23(e), approval of a settlement is a multi-step process, beginning with preliminary approval, followed by notice to the class and the filing of any objections, and concludes with a motion for final approval and fairness hearing. Preliminary approval is not a dispositive assessment of the fairness of the proposed settlement, but rather determines whether it falls within the "range of possible approval."[3] Preliminary approval establishes an "initial presumption" of fairness, such that notice may be given to the class and the

---

[3] *See Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 301-02 (E.D. Cal. 2011).

class may have a full and fair opportunity to consider the proposed settlement.[4]

Preliminary approval is appropriate if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.[5] The Court should take into account "all the normal perils of litigation as well as the additional uncertainties inherent in complex class action." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179 (5th Cir. 1979). The "initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."[6]

In the Ninth Circuit, the test of fairness considers the following factors: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of continued litigation; the risk of certification and maintaining class action status through trial; the discovery completed; the size of the settlement; the stage of the case at which settlement is proposed, the experience and views of counsel; government involvement; and the reaction of class members.[7] The particulars of the case and proposed settlement determine the weight to be provided each factor.[8] The Court must also ensure the settlement is procedurally fair; that it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties."[9] This Settlement is fair under these factors, and was achieved through procedurally fair, arm's-length negotiations, it should be preliminarily approved.

1. **The Settlement Is a Substantively Fair, Reasonable, and Adequate Resolution of the Flex Program Litigation.**

---

[4] *In re Tableware Antitrust Litig*., 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007).

[5] *See Bickley v. Schneider Nat'l, Inc*., No. 08-cv-05806-JSW, 2016 WL 4157355, at *1 (N.D. Cal. Apr. 25, 2016); *Zepeda v. PayPal, Inc*., No. C 10-2500 SBA, 2015 WL 6746913, at *4 (N.D. Cal. Nov. 5, 2015); *Fraley v. Facebook, Inc*., No. C 11-1726 RS, 2012 WL 5838198, at *1 n.1 (N.D. Cal. Aug. 17, 2012); *In re Tableware*, 484 F. Supp. 2d at 1079.

[6] *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982)

[7] *See Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998).

[8] *See Officers of Justice*, 688 F.2d at 625.

[9] *See id.*

10

**a. The Settlement provides substantial recovery to the Class consistent with the strength of Plaintiffs' claims.**

Plaintiffs allege that Defendants falsely advertised the Flex Program as rent-to-own and delivered hardware that did not conform to the specifications or performance metrics represented. ¶¶ 4, 113. Unlike cases that rely on complex circumstantial evidence, Plaintiffs also point to public statements attributed to NZXT CEO, Johnny Hou, who acknowledged that certain advertising campaigns "were not factual," "didn't represent the actual program," and described the program as "ownership when it really is a rental program." ¶ 108.

The strength of the case is further reinforced by Plaintiffs' allegations regarding Defendants' misrepresentations in the Flex Program. Plaintiffs contend that when subscribers clicked on the "Subscribe" toggle, in some instances lesser hardware specifications were displayed and provided than for purchased PCs, so that consumers may not have recognized that the PCs they were leasing had lesser specifications than those displayed on the "Buy" page they initially viewed. ¶¶ 47, 54. Plaintiffs allege that this design, along with their Flex Program structure, was used to provide subscribers with PCs of inferior quality and value than promised. ¶ 113. Plaintiffs also allege that these practices resulted in violations of debt collection laws. ¶ 93.

Plaintiffs contend that the RICO claims have merit given the coordinated roles of NZXT and Fragile, which operated as a unified enterprise in administering the program and collecting payments from consumers who became delinquent. ¶¶ 98, 124, 135.

**b. There would be substantial risk, expense and complexity in continuing the litigation, which could last for years and would imperil the Settlement.**

This case presents substantial recovery risk because Defendants deny that their NZXT Flex marketing was misleading, that consumers received materially different PCs, or that any debt-collection practices were unlawful. Plaintiffs therefore face meaningful risk that claims could be dismissed or narrowed, rejected at summary judgment or trial, or fail to satisfy classwide proof requirements such as common exposure and materiality. ¶ 160. Defendants would contend

that differences in disclosures, marketing, and purchasing paths present individualized issues relevant to certification and liability. See Loeser Decl. ¶ 39.

Continued litigation would involve additional time and expense, including discovery, motion practice, and class certification proceedings, and would delay any recovery. The Settlement provides a prompt and certain resolution in light of those risks.

To assess the value of the proposed Settlement, it must be measured against the recovery Plaintiffs could have sought had this case proceeded through class certification, merits discovery, and trial.[10] A damages estimate would address Plaintiff's allegations that they overpaid by as much as $600 for certain Flex PCs, in addition to  statutory damages, statutory penalties, treble damages, punitive damages, disgorgement, and restitution.  Plaintiffs estimate that given the class size of 19,322, estimated actual damages could be up to $11.59 million.  The overall settlement value represents approximately 30% of those damages.  Even if those damages were to be doubled in some instances (because of statutory damages, trebling, etc.), the settlement would represent approximately 15% of the potential recovery. [11]

### c.    The Settlement Class carries material certification risk.

While Plaintiffs believe liability evidence is strong in this case, certification draws a different test and may be challenging to achieve and maintain in this case. A class has not been certified in this case, and Defendants will oppose certification if the case proceeds. *See In re*

---

[10] *Procedural Guidance for Class Action Settlements*, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA (modified Sept. 5, 2024) https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/procedural-guidance-class-action-settlements at Section 11 (last visited Mar. 29, 2026).

[11] *Fraley v. Batman*, 638 F. App'x 594, 597 (9th Cir. 2016) (approving of district court "settlement which awarded $15 to each claiming class member, notwithstanding the possibility of $750 statutory penalty" (i.e., 2.0% of statutory damages) and noting "an award of $750 per claiming class member could implicate due process concerns"); *Hubbard v. Henkel Corp.*, 2021 No. 19-CV-04346-JST, 2021 WL 12171868, at *7 (N.D. Cal. Feb. 25, 2021) (granting preliminary approval where "payment … per class member … is substantially below the range of potential statutory damages" because it "falls within the range of reasonableness in view of litigation risks and costs") (quotation marks and citation omitted); *Esomonu v. Omnicare, Inc.*, No. 15-CV-02003-HSG, 2019 WL 499750, at *4 (N.D. Cal. Feb. 8, 2019) (granting final approval where settlement amount is "substantially below the range of potential statutory damages").

*Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013). Principal concerns are the sophistication of the Settlement Class Members and the size of potential recoveries. Many Settlement Class Members are experienced consumers who could challenge the claims on an individual basis or assert defenses specific to their own circumstances. Moreover, the potential variation in payments, usage, or delinquency history could complicate classwide proof. These issues would likely give rise to arguments concerning individualized reliance, variation in damages, and whether common questions predominate over individual issues under Rule 23(b)(3). As litigation progresses, these differences might undermine the cohesiveness of the Class and create arguments against predominance or typicality. This factor supports approval of the settlement because manageability of a settlement class is not a requirement of provisional certification and at present Settlement Class Members interests and concerns are substantially aligned and cohesive.

### d.   *Proposed Class Counsel Reviewed Discovery Relevant to the Flex Program.*

Prior to and following mediation, Plaintiffs obtained and reviewed information concerning the Flex Program, including documents and data sufficient to evaluate the claims, assess potential damages, and inform the proposed Settlement. See Loeser Decl. ¶¶11, 16.

### e.   *The settlement is by all measures substantial and adequately reflects the magnitude of harm to the Settlement Class.*

The Settlement Class Consideration in this case is $3,450,000. Unlike cases involving hundreds of thousands of class members, this Settlement Class consists of a defined group of just over nineteen thousand participants in the Flex Program, meaning the average recovery per Settlement Class Member is substantial.

"In considering the strength of Plaintiff's case, legal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval." *Browning v. Yahoo! Inc.*, No. C04–01463 HRL, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007) (citing *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *3 (N.D. Cal. 2007)); *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 317 (N.D. Cal. 2018) ("legal

uncertainty supports approval of a settlement"). Here, the precise amount of recoverable damages would be subject to dispute, potential recovery would depend on individualized factors including the timing of each subscription, the specifications of the PC received, the payments made, and whether class members experienced the alleged discrepancies between advertised and delivered products. These variables introduce uncertainty into any aggregate damages calculation.

The size of the Settlement strongly supports approval because it is substantial in light of the size of the Settlement Class and the risks of continued litigation, and reflects both the strength of the Class Members' claims against Defendants and the need to provide restitution for the harms caused by the Flex Program. In light of these uncertainties, the Settlement provides meaningful and immediate value to the Settlement Class. This Settlement ensures timely and substantial relief to Class Members while avoiding the delay, expense, and uncertainty of continued litigation.

### f.  In light of the unique facts and circumstances of this case, that it is being settled at an early stage of the case does not imperil approval.

This case is still in its early stages. Defendants have not filed an answer or otherwise responded to the Complaint. While the parties have exchanged information and engaged in settlement discussions, there has been no motions practice or class certification briefing. The nature of the evidence of alleged deceptive practices in the Flex Program and the importance of providing timely relief to Settlement Class Members suggest that an early resolution of the case is desirable. Settling now avoids prolonged litigation, unnecessary expense, and uncertainty, ensuring that Settlement Class Members receive restitution promptly. For these reasons, the timing of this Settlement strongly weighs in favor of preliminary approval of the Settlement.

### g.  Plaintiffs' counsel and Defendants' counsel are highly experienced class action litigators and they fully support the Settlement.

Levi & Korsinsky, LLP and Cotchett, Pitre & McCarthy, LLP are two of the most experienced plaintiffs class firms in the country, especially in the context of large consumer class cases. Thomas E. Loeser, Mark S. Reich, and Michael N. Pollack have decades of combined experience representing consumers, securing substantial recoveries in class actions. Notably, their

14

experience includes leadership roles in consumer matters. Mr. Reich and his colleagues helped achieve significant settlements, and numerous high-profile consumer fraud, product defect, and securities class actions. Their depth of knowledge regarding consumer claims and damages brings critical perspective to this litigation and the unique issues presented by the Flex Program.

Levi & Korsinsky, LLP and Cotchett, Pitre & McCarthy, LLP strongly support this Settlement. It provides Settlement Class Members with substantial financial relief to compensate for the losses caused by Defendants' misconduct. Beyond monetary relief, the Settlement also establishes a cooperative path forward, allowing Defendants and Settlement Class Members to resolve disputes constructively, maintain business continuity, and avoid the risks and delays of protracted litigation. The judgment of Plaintiffs' counsel that the Settlement is fair and reasonable is entitled to great weight.[12] "[A]bsent fraud, collusion, or the like, [the Court] should be hesitant to substitute its own judgment for that of counsel."[13]

Likewise, Defendants' counsel, Claudia M. Vetesi of Morrison & Foerster LLP and Christopher A. LaRocco of Vorys, Sater, Seymour & Pease LLP, strongly support the Settlement. Both counsel are highly experienced in complex consumer, class action, and commercial litigation. Their familiarity with Defendants' operations, resources, and legal obligations ensured that the negotiations were rigorous, informed, and conducted at arm's length. The strong support of these highly experienced counsels in the negotiation of the Settlement further supports its fairness and preliminary approval.

### h. The Settlement Is the Result of Arm's-Length Negotiations.

This Settlement arises out of extended, informed, arm's-length negotiations between counsel for the parties. The parties reached Settlement Agreement after months of intensive investigation, specific document discovery, and mediation. As a result, Plaintiffs' Counsel had

---

[12] *See Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576-77 (9th Cir. 2004); *OFJ*, 688 F.2d at 625 (same); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight").

[13] *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation omitted).

ample information to participate in an informed, and thus reasonable negotiation process.[14] And with that knowledge to bring to bear, Plaintiffs' counsel held mediation with Professor Eric Green, and multiple settlement meetings and communications with Defendants' counsel, who were similarly very sophisticated and well-informed. The parties conducted a full-day mediation with Professor Green on November 13, 2025, and continued to negotiate the terms of this Settlement Agreement during the months thereafter.[15]

Those non-collusive negotiations between experienced counsel support preliminary approval.

### i. Proposed Attorneys' Fees and Cost are Reasonable

Class Counsel intend to apply for an award of attorneys' fees of up to 25% of the total Settlement Class Consideration, plus reimbursement of reasonable litigation expenses, subject to Court approval. Plaintiffs provide this information under the Court's Procedural Guidance and do not seek a final determination of any fee award at this stage. The intended request is consistent with the Ninth Circuit's benchmark approach in common-fund cases, while remaining subject to the Court's independent review under both the percentage method and a lodestar cross-check. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002).

While it will be brought current to the time of Class Counsel's fee petition, Class Counsel's total lodestar to date is $648,846.25, and their litigation expenses to date are $26,701. A 25% benchmark fee request on the $3,450,000 Settlement Class Consideration would equal $862,500 which reflects a current multiplier of approximately 1.33. The lodestar will increase modestly through the fee petition, final approval, settlement administration, and settlement

---

[14] *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (holding "significant investigation, discovery and research" supported the district court's conclusion "that the Plaintiffs had sufficient information to make an informed decision about the Settlement").

[15] *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (finding the presence of a neutral mediator "a factor weighing in favor of a finding of non-collusiveness"). *see also Satchell v. Fed. Exp. Corp.*, Nos. C03–2659 SI, C 03–2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

implementation, thus further reducing the cross-check multiplier. Plaintiffs submit that the contemplated request is within the reasonable range, but acknowledge that the Court will make the final determination on a complete record after review of the fee petition to be submitted.

### j.    Discussion of the Settlement Class, Release, and Other Cases Under the Court's Procedural Guidance

The Court's Procedural Guidance ("Guidelines")[16] directs that a motion identify any differences between the settlement class and the class in the complaint, any differences between the released claims and those asserted, and whether other cases are affected. Guidelines § (1).

The Complaint proposed multiple classes and subclasses. ¶ 154. The Settlement instead resolves the case on behalf of a single nationwide Settlement Class of Flex Program subscribers. SA § 35. That difference is appropriate in the settlement context, where no litigation class has been certified and the alleged conduct arises from uniform practices directed at participants nationwide. ¶¶ 1, 3-6. Differences among class members are addressed through the plan of allocation using objective criteria. SA §§ B.4-B.10; C.1-C.7.

The Settlement releases only claims arising from the same factual predicate as those alleged in the Complaint.[17] SA Recitals; SA § I.1.

There are no other known cases that will be affected by this Settlement. Counsel is not aware of any action, whether active or stayed, where approval of this Settlement would release claims. Accordingly, there are no overlapping cases to disclose under the Guidelines.

### B.    The Court Should Certify the Settlement Class

Class certification, whether through motions practice or uncontested in conjunction with a proposed settlement, requires: (1) that "the class is so numerous that joinder of all parties is

---

[16] *Procedural Guidance for Class Action Settlements*, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA (modified Sept. 5, 2024) https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/procedural-guidance-class-action-settlements (last visited Mar. 29, 2026).

[17] The Parties considered providing a higher recovery to California Debt Collection subclass members, but ultimately did not do so because of the litigation risk associated with seeking duplicative statutory damages under both the Rosenthal Act and the FDCPA. *Gonzales v. Arrow Financial Services, LLC*, 660 F.3d 1055, 1069 (9th Cir. 2011).

impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."[18] When a proposed class seeks monetary damages, and not just injunctive relief, "questions of law and fact common to class members [must] predominate over any questions affecting only individual members," and the class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy."[19] But unlike in a contested class certification process, a proposed settlement class does not require a showing that a trial on class claims would present no manageability issues—precisely because there will be no trial that needs to be managed.[20]

### 1. The Proposed Class is Ascertainable.

Although not specified in Rule 23, courts imply a prerequisite that the proposed class be ascertainable.[21] "A class definition should be precise, objective, and presently ascertainable."[22] Ascertainability is satisfied when it is "administratively feasible for the court to determine whether a particular individual is a member."[23]

The Settlement Class definition here utilizes objective criteria that make class membership objectively verifiable. The identity of Class members is easily ascertainable through reference to "objective criteria,"[24] because Defendants maintain records of all consumers in the United States who participated in the Flex Program. Accordingly, the identity of Settlement Class Members is known or can be readily determined from Defendants' business records.

### 2. Each of the Rule 23(a) Requirements Are Met

---

[18] Fed. R. Civ. P. 23(a).
[19] Fed. R. Civ. P. 23(b)(3).
[20] *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).
[21] *Galvan v. KDI Distrib*., No. SACV 08-0999-JVS ANX, 2011 WL 5116585, at *3 (C.D. Cal. Oct. 25, 2011); *In re Northrop Grumman Corp. ERISA Litig*., No. CV 06-06213 MMM JCX, 2011 WL 3505264, at *7 n.61 (C.D. Cal. Mar. 29, 2011).
[22] *Evans v. IAC/Interactive Corp*., 244 F.R.D. 568, 574 (C.D. Cal. 2007) (internal quotations omitted).
[23] *In re Northrop Grumman*, 2011 WL 3505264, at *7 n.61 (internal quotation omitted).
[24] *See Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 566 (W.D. Wash. 2012).

### a. The Class is so numerous that joinder is impracticable.

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is "impracticable."[25] Numerosity "depends on the facts and circumstances of each case and does not, as a matter of law, require any specific minimum number of class members."[26] Courts generally find numerosity when a class includes at least 40 members.[27]

Here, the numerosity requirement is easily met because there are 19,322 Settlement Class Members. This number of Settlement Class Members makes joinder impracticable.[28]

### b. The Commonality Requirement Is Satisfied.

Questions of fact and law that are common to the class satisfy Rule 23(a)(2). This litigation centers around allegations that Defendants engaged in a coordinated enterprise to defraud consumers by falsely advertising the Flex Program as a "rent-to-own" subscription for new, high-performance gaming PCs with "no contracts" and "no hidden fees," while allegedly delivering computers with lesser specifications and performance and binding consumers to deceptive, onerous agreements. These issues can be resolved on a classwide basis and are sufficient to satisfy Rule 23(a)(2).

### c. The Class Representative's claims are typical of those of other Class Members.

Rule 23(a)(3) requires that the class representative's claims are typical of the class. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"[29] "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief

---

[25] *Hanlon*, 150 F.3d at 1019.

[26] *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d 1324, 1340 (W.D. Wash. 1998).

[27] *See Z.D. v. Grp. Health Coop.*, No. C11–1119RSL, 2012 WL 1977962, at *3 (W.D. Wash. June 1, 2012).

[28] *See Brown v. Consumer Law Assocs., LLC*, 283 F.R.D. 602, 612 (E.D. Wash. 2012) (class of 894 debt settlement customers satisfied numerosity requirement).

[29] *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

sought."[30] "Under the 'permissive standards' of this Rule, 'representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.'"[31] The "focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff."[32]

The proposed Class Representatives here are Jacob Burns, Jonathan Moulton, and Steven Zou. Plaintiffs' claims arise from the exact same course of conduct by Defendants and rely on the same legal theories as the absent Settlement Class Members. Plaintiffs are consumers who, like every Settlement Class Member, leased gaming computers through the Flex Program. They, and Settlement Class Members, allege they were affected by Defendants' uniform practices, which included representations regarding "rent-to-own" marketing, the delivery of computer hardware that differed from advertised specifications, and the enforcement of uniform contractual terms regarding fees and barred ownership. ¶ 160. Thus, because Plaintiffs' claims rely on facts and legal theories identical to those of the Settlement Class, the typicality requirement is satisfied.

### d. The Class Representative and its counsel adequately represent the interests of the Class.

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. The relevant inquiries are: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[33]

Here, the proposed Class Representatives, Jacob Burns, Jonathan Moulton, and Steven Zou, are committed to the action and have actively participated in its prosecution, including by providing information, assisting counsel, and reviewing relevant materials. The Class Representatives have no interests that are antagonistic to other Settlement Class Members and

---

[30] *Id.*

[31] *Galvan*, 2011 WL 5116585, at *6 (quoting *Hanlon*, 150 F.3d at 1020).

[32] *Costelo v. Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009) (quoting *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)).

[33] *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d 1011, at 1020  1998)); see also *Galvan*, 2011 WL 5116585, at *7.

share a strong and identical interest in obtaining relief for the Settlement Class Members regarding the alleged deceptive marketing and administration of the Flex Program. Because Plaintiffs' claims arise from the same operative facts and are based on the same legal theories as the rest of the Settlement Class, their goals are aligned. ¶ 160.

Similarly, proposed Class Counsel are well-qualified, possess no conflicts of interest, and have demonstrated their capability to prosecute this action vigorously on behalf of the Settlement Class. ¶ 161. Plaintiffs have retained Cotchett, Pitre & McCarthy and Levi & Korsinsky, both of which possess extensive experience and proven track records in handling complex commercial and consumer class action litigation. Since the inception of this case, Plaintiffs' counsel has thoroughly investigated Defendants' practices, including analyzing hardware, reviewing deceptive influencer marketing materials, and the structure of the Flex Program. The firms' combined expertise in consumer and class action litigation demonstrate that proposed Class Counsel are adequate to represent the Settlement Class in this matter.

### 3. The Requirements of Rule 23(b)(3) Are Met.

A class may be certified under Rule 23(b)(3) when "questions of law or fact common to the class members predominate over any questions affecting only individual members" and the class action mechanism is "superior" to other methods of adjudicating the controversy.[34]

### a. *Common issues of law and fact predominate.*

Here, common issues predominate. The common issues are Defendants' uniform marketing of the Flex Program as a "rent-to-own" subscription with "no contracts," their systematic practice of delivering PCs with components materially inferior to those advertised, and their use of a standardized, sign-up agreement. Whether those practices were misleading and violated applicable law can be resolved using common proof.

### b. *Individual Differences Do Not Defeat Classwide Resolution*

While Settlement Class Members' experiences may differ with respect to the specific representations they encountered, the configurations of the PCs they received, and the payments

---

[34] Fed. R. Civ. P. 23(b)(3).

they made, those differences relate primarily to the extent of damages and not to whether Defendants' alleged conduct was uniform and capable of classwide resolution. The individual issues are limited to the specific PC model each consumer leased, or the exact amount of damages they suffered. However, these individual variations will have little effect, if any, on any aspect of the case because the allegations against Defendants simply do not turn on the identity or any individual characteristics of the consumers. Liability in this matter turns on Defendants' standardized program structure, disclosures, and marketing representations.

Under Rule 23(b)(3), these individual variations do not defeat predominance because the core legal and factual questions regarding Defendants' standard business practices can be effectively resolved on a classwide basis. However, while these individualized differences do not defeat predominance, they would undoubtedly complicate continued litigation and introduce significant uncertainty into any trial-based damages analysis. The proposed Settlement expertly navigates these complexities by providing structured, immediate, and meaningful relief to the Settlement Class without the need for prolonged, individualized adjudication.

### c. *The class action mechanism is superior to any other methods of adjudication.*

The superiority requirement is satisfied because Defendants' alleged conduct and its effects can be resolved on a classwide basis in a single proceeding. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."[35] A class action is the superior means of resolution. *See, e.g., Custom Led, LLC v. eBay, Inc.*, No. 12-CV-00350-JST, 2013 WL 4552789, at *5 (N.D. Cal. Aug. 27, 2013) (Tigar, J.) (superiority established because a "class action would achieve the resolution of the putative class members' claims at a lower cost and would reduce the likelihood of inconsistent determinations").

Also, in this case, the relatively modest individual damages at issue, when compared to

---

[35] *Hanlon*, 150 F.3d at 1022.

the costs of litigating complex consumer protection claims, weigh heavily in favor of a class action. Absent certification, many consumers would lack the incentive or resources to pursue individual claims, particularly given the complexity of the legal issues and the need for expert analysis. Proceeding through individual actions "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs."[36]

A class action is superior, not only based on judicial economy, but because it represents the most practical and efficient way to resolve the claims of consumers who were subject to the same alleged misconduct. It ensures consistent adjudication of common issues, avoids duplicative litigation, and enables recovery that might be unavailable on an individual basis.

For these reasons, the proposed Settlement Class meets the requirements of Rule 23(a) and 23(b)(3), and the Court should grant provisional certification for purposes of effecting the proposed Settlement.

### C. The Proposed Manner and Form of Notice Satisfies Rule 23

Rule 23(e)(1) requires that a court approving a class action settlement "direct notice in a reasonable manner to all class members who would be bound by the proposal."[37] A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."[38]

The proposed plan for notice will be highly effective in alerting each Class Member to the Settlement and its terms. It is the "the best notice that is practicable under the circumstances."[39] The Notice program is designed to reach *all* Settlement Class Members using contact information maintained in Defendants' records.

Moreover, the proposed notice of settlement follows, as closely as possible, the language

---

[36] *See id*. at 1023.
[37] Fed. R. Civ. P. 23(e)(1).
[38] *Churchill Vill*., 361 F.3d at 575; see also Fed. R. Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice).
[39] Fed. R. Civ. P. 23(c)(2)(B).

recommended by this District's Procedural Guidance for Class Action Settlements[40] and required by the Ninth Circuit.[41] There will be links to the Settlement website that will contain the notice of settlement, key court documents, and other important information about the case. With this motion, Plaintiffs submit a proposed notice of settlement, which Defendants have approved.[42]

Courts have found that notice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23. Here, the notice will reach 100% of the Class. These notice provisions meet the requirements of Rule 23 and will allow the Class a full and fair opportunity to review and respond to the proposed settlement.

### D.  The Proposed Schedule for Dissemination of Notice and Final Approval

Plaintiffs propose the following schedule for notice and final approval:

| Event | Deadline |
|---|---|
| Hearing and order re preliminary approval | |
| Defendants provide data to Settlement Administrator | [30 days after preliminary approval order] |
| Notice to be sent to each Class member | [30 days after Defendants provide data to Settlement Administrator] |
| Last day for motion for attorneys' fees, costs, expenses, and service awards | [20 days before objection deadline] |
| Last day to file objections to the settlement or requests for exclusion from the class ("Opt-Out Date") | [60 days after the Notice Date.] |
| Last day for motion in support of final approval of settlement | [two weeks after objection deadline] |
| Last day for response to objections, reply in support of motion for final approval, and reply in support of motion for attorneys' fees, costs, expenses, and service awards | [one week prior to the final fairness hearing] |
| Final Fairness Hearing | [three weeks after motion for final approval], unless otherwise ordered by the Court |

---

[40] *See Procedural Guidance for Class Action Settlements*, UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA (modified Sept. 5, 2024) https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/procedural-guidance-class-action-settlements (last visited March 29, 2026).

[41] E.g., *In re Online DVD Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015); *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012); *Rodriquez*, 563 F.3d at 962.

[42] The Class Notice is attached as Exhibit A to the Settlement Agreement.

24

**E.  The Settlement Administration Procedures Are in the Best Interests of the Class**

Epiq is an experienced settlement administrator and has represented that it maintains appropriate procedures for the secure handling of class member data. *See* Exhibit A. Epiq estimates administration costs of approximately $50,559, to be paid from the Settlement Cash Fund. See SA § § G.6. Its proposed notice and payment methods are designed to provide efficient administration. Class Counsel selected Epiq through a competitive request-for-proposal process consistent with the Guidelines, under which Epiq submitted the lowest bid for matched services.

Cotchett, Pitre & McCarthy LLP and Levi & Korsinsky LLP have experience in complex class actions and support Epiq's appointment. *See* Loeser Decl. ¶¶ 22-23. Class Counsel prepared a document describing the material terms of the proposed settlement, including the settlement structure, estimated class size, available class-member data, and the anticipated notice and claims-administration process, and sent that identical document to three nationally recognized settlement administrators. Three proposals were received, each offering comparable administration services. Epiq's bid was the lowest, approximately 15% lower than the highest bid and approximately 10% lower than the next-highest bid. Class Counsel therefore selected Epiq based on the combination of comparable services, national experience, and lower cost. Over the last two years, Epiq has also served as administrator in matters in which lead class counsel's firms held leadership roles, including five matters involving Cotchett, Pitre & McCarthy and seven matters involving Levi & Korsinsky, across eleven unique cases.[43] It bears noting that over this same time frame, the firms resolved scores of cases where Epiq was not chosen to serve as the Settlement Administrator.

---

[43] *In re ConnectOnCall.com Data Breach Litig.*, No. 2:24-cv-08790 (E.D.N.Y.); *Thompson v. John Muir Health*, No. C22-02125 (Cal. Super. Ct., Contra Costa Cnty.); *Pitkin v. State Farm Gen. Ins. Co.*, No. 3:23-cv-00924 (N.D. Cal.); *Pampena v. Musk*, No. 3:22-cv-05937 (N.D. Cal.); *Doe v. Am. Med. Response*, No. 23-CIV-02842 (Cal. Super. Ct., San Mateo Cnty.); *Teuza v. Lindon*, C.A. No. 2022-0130-SG (Del. Ch.); *In re Supernova Partners Acquisition Co.*, C.A. No. 2024-0887-PAF (Del. Ch.); *McCants v. Sunlight*, C.A. No. 2023-0694-PAF (Del. Ch.); Meyer, et al. v. Weil, et al., No. 24-C-23-003628 (Cir. Ct. Balt. City); *Edge v. Tupperware Brands Corp.*, No. 6:22-cv-01518 (M.D. Fla.); *Carter v. B. Riley Sec., Inc.*, C.A. No. 2024-0605 (Del. Ch.).

**CONCLUSION**

Plaintiffs respectfully request that this Court enter an order: (1) preliminarily approving the proposed class action settlement; (2) provisionally certifying the Settlement Class; (3) appointing Epiq to serve as the Claims Administrator; (4) approving the manner and form of notice; and (5) setting a final fairness hearing.

DATED: April 7, 2026.

**COTCHETT, PITRE & MCCARTHY, LLP**

By: */s/ Thomas E. Loeser*
Joseph W. Cotchett, Cal. Bar No. 36324
Thomas E. Loeser, Cal. Bar No. 202724
840 Malcom Road
Burlingame, CA 94010
Tel: 650-697-6000
Fax: 650-697-0577
jcotchett@cpmlegal.com
tloeser@cpmlegal.com

Karin B. Swope (*pro hac vice*)
Jacob M. Alhadeff (*pro hac vice*)
**COTCHETT, PITRE & MCCARTHY, LLP**
1809 7th Ave., Ste. 1610
Seattle, WA 98101
Tel: (206) 802-1272
Fax: (206) 299-4184
kswope@cpmlegal.com
jalhadeff@cpmlegal.com
Mark S. Reich*
Michael N. Pollack*

**LEVI & KORSINSKY, LLP**
33 Whitehall Street, Floor 27
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: mpollack@zlk.com

* *pro hac vice* forthcoming

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2026, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing. The Clerk of the Court will transmit a Notice of Electronic Filing to all ECF registrants.

/s/ Thomas E. Loeser
Thomas E. Loeser

27