# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement" or "Settlement Agreement") is made as of the Settlement Date, defined below, by and between (a) Fragile, Inc., a Delaware corporation with offices at 75 14th Street, San Francisco, California 94103 ("Fragile"); (b) NZXT, Inc., a Delaware corporation with offices at 605 East Huntington Drive, Suite 213, Monrovia, California 91016 ("NZXT") (collectively with Fragile, "Defendants"); and (c) Plaintiffs Jacob Burns, Jonathan Moulton, and Steven Zou ("Plaintiffs"), individually and as representatives of the Settlement Class, as defined below (collectively, the "Parties"), in accordance with the terms and conditions set forth below.

## DEFINITIONS

As used herein, the following terms have the meanings set forth below:

1.     "Attorneys' Fees and Expense Payment" shall mean the amount of attorneys' fees and reimbursement of costs and expenses awarded to Class Counsel by the Court from the Settlement Cash Fund.

2.     "Claimant" shall mean a Settlement Class Member who has made a claim for compensation or other relief from the Settlement Class Consideration.

3.     "Claim Form" shall mean the form for Settlement Class Members to make a claim for a cash payment or PC Retention, substantially in the form of Exhibit D.

4.     "Claim Period" shall mean the period of time during which Settlement Class Members may submit a Claim Form. The Claim Period will begin on the Notice Date and will end 90 days after the Notice Date.

5.     "Class Payment" shall mean a monetary payment from the Net Settlement Cash Fund to Settlement Class Members pursuant to the Plan of Allocation described herein.

6.     "Class Representatives" or "Plaintiffs" or "Named Plaintiffs" shall mean Jacob Burns, Jonathan Moulton, and Steven Zou.

7.     "Court" means the United States District Court for the Northern District of California presiding over the Lawsuit.

8.     "Covered Debt" shall mean outstanding amounts owed to Fragile for NZXT Flex Program subscriptions that are more than 90 days delinquent as of March 30, 2026.

9.     "Data Production Date" shall mean the period of time ending 30 days after entry of the Preliminary Approval Order. On or before the Data Production Date, Defendants will provide to the Settlement Administrator (but not to Class Counsel) for all Settlement Class Members, where available, the name, last known mailing address, email address, NZXT Flex PC model, the total value of the PC reflecting an estimated discounted current value of the PCs to the Settlement Class Members, dates the Settlement Class Member's subscription started and ended, whether the

1

Settlement Class Member has their NZXT Flex PC, and relevant payment history for each Settlement Class Member.

10.     "Debt Forgiveness" shall mean cancellation of all Covered Debt by Fragile, as set forth in Section B.7-10.

11.     "Defendants' Counsel" shall mean Fragile's and NZXT's counsel of record in this Lawsuit.

12.     "Effective Date" shall mean the first day after which all of the following events and conditions of this Settlement Agreement have occurred or have been met: (a) the Court has entered a Final Approval Order approving the Settlement, and (b) the Court has entered a judgment that has become final ("Final") in that the time for appeal or writ of certiorari has expired or, if an appeal or writ of certiorari is taken and the Settlement is affirmed, the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired. If the Final Judgment is set aside, materially modified, or overturned by the trial court or on appeal, and is not fully reinstated on further appeal, the Final Judgment shall not become Final. In the event of an appeal or other effort to obtain review, the Parties may agree jointly in writing to deem the Effective Date to have occurred; however, there is no obligation to agree to advance the Effective Date. Any order or proceeding relating to the application for an Attorneys' Fee and Expense Payment and Service Awards, the pendency of any such application, or any appeal from any such order, shall not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of any judgment approving the Settlement.

13.     "Final Approval Hearing" shall mean the hearing at or after which the Court will determine whether to finally approve the Settlement. The Final Approval Hearing shall occur at least 20 days after the Objection and Exclusion Deadline, on such date as set by the Court.

14.     "Final Approval Order" shall mean the final order to be submitted to the Court in connection with the Final Approval Hearing.

15.     "Final Judgment" shall mean the judgment finally approving the Settlement and dismissing with prejudice the claims of the Settlement Class Members.

16.     "Full Class Notice" shall mean the notice that will be posted on the Settlement Website, substantially in the form attached hereto as Exhibit A, as set forth in Section G, "Notice and Settlement Administration."

17.     "Lawsuit" shall mean the litigation first filed on August 5, 2025, styled *Burns et al. v. NZXT, Inc. & Fragile, Inc.*, Case No. 4:25-cv-06604 (N.D. Cal.).

18.     "Net Settlement Cash Fund" shall mean the monetary amount of the Settlement Fund, reduced by the sum of the following amounts: (1) the costs of Notice and the costs of administering the Settlement, as set forth in Section G below; and (2) any Attorneys' Fees and Expense Payment to Class Counsel awarded by the Court, and any Service Award to the Class

2

Representatives awarded by the Court, as set forth in Section H below, and any taxes owed (but not any taxes owed by any individual Class Counsel, Plaintiff, or Settlement Class Members).

19.     "Notice" shall mean the Summary Notice and the Full Class Notice.

20.     "Notice Date" shall mean the date set forth in the Preliminary Approval Order for commencing the transmission of the Notice. The Notice Date must occur no later than 30 days after the Data Production Date, or on such date as set by the Court, with the exception of any Notice that is remailed. Notice shall be completed no less than 45 days before the Objection and Exclusion Deadline.

21.     "Notice of Appearance" shall mean a document filed by counsel for any objector seeking to appear at the Final Approval Hearing.

22.     "Notice of Intention to Appear" shall mean a document filed by a Settlement Class Member to the Court providing notice that they intend to speak at the Final Approval Hearing.

23.     "NZXT Flex PC" shall mean the personal computer ("PC") that a Settlement Class Member obtained pursuant to a Subscription Agreement with Fragile under the NZXT Flex Program.

24.     "NZXT Flex Program" shall mean Defendants' subscription service for NZXT Flex PCs.

25.     "Objection and Exclusion Deadline" shall mean the date by which a Settlement Class Member must submit an objection to this Settlement Agreement to the Court or an opt-out form to the Settlement Administrator. The Objection and Exclusion Deadline shall be not less than 60 days after the Notice Date.

26.     "PC Retention" shall mean relief provided to Settlement Class Members who submit a valid claim allowing them to retain their NZXT Flex PCs permanently, without making further payments and having any outstanding debts to Defendants cancelled, as set forth in Section B, the "Claim Form and Plan of Allocation."

27.     "Plaintiffs' Counsel" or "Class Counsel" shall mean Cotchett, Pitre & McCarthy LLP and Levi & Korsinsky, LLP.

28.     "Plan of Allocation" shall mean the allocation system by which the Settlement Class Consideration is distributed.

29.     "Postcard Notice" shall mean postcard notices to be distributed to the Settlement Class in connection with the Settlement, substantially in the form attached hereto as Exhibit B, as set forth in Section G, "Notice and Settlement Administration."

30.     "Preliminary Approval Hearing" shall mean the hearing at or after which the Court will determine whether to preliminarily approve the Settlement.

3

31.    "Preliminary Approval Order" shall mean the order preliminarily approving the Settlement and providing for Notice to the Settlement Class, the proposed form of which is attached hereto as Exhibit E.

32.    "Service Award" shall mean the award sought by each Class Representative—and subsequently approved by the Court—in consideration for their service as Class Representatives.

33.    "Settlement Administrator" shall mean Epiq Global, an independent settlement administrator, subject to the approval of the Court.

34.    "Settlement Cash Fund" shall mean a non-reversionary cash fund in the amount of $1,450,000 to be paid by Defendants, as agreed between Defendants, into an account established by the Settlement Administrator in accordance with the terms of this Settlement Agreement.

35.    "Settlement Class" shall mean all persons who reside in the United States, who currently subscribe, or previously subscribed to, the NZXT Flex Program to obtain a PC. The Settlement Class excludes Fragile; NZXT; any entity in which Fragile or NZXT has a controlling interest; Fragile's and NZXT's directors, officers, and employees; and Fragile's and NZXT's legal representatives, successors, and assigns. Also excluded from the Settlement Class are all judicial officers assigned to this case as well as their staff and immediate families. The Class Period shall be October 19, 2023, to March 30, 2026.

36.    "Settlement Class Consideration" shall mean the total monetary value of relief available to the Settlement Class consisting exclusively of Settlement Cash Fund and Settlement Non-Cash Consideration, totaling $3,450,000.

37.    "Settlement Class Member" shall mean every member of the Settlement Class who does not validly and timely request exclusion from the Settlement Class.

38.    "Settlement Date" shall mean the date that this Settlement Agreement becomes fully executed.

39.    "Settlement Non-Cash Consideration" shall mean (i) the monetary amount of Debt Forgiveness, as set forth in Section B.7 of the Plan of Allocation; and (ii) the estimated value of the NZXT Flex PCs that eligible Settlement Class Members may elect to retain, as set forth in Section B.5 of the Plan of Allocation.

40.    "Subscription Agreement" shall mean the agreement between Fragile and each member of the Settlement Class pursuant to which each member of the Settlement Class signed up for the NZXT Flex Program.

41.    "Summary Notice" shall mean email notices to be distributed to the Settlement Class in connection with the Settlement, substantially in the form attached hereto as Exhibit C, as set forth in Section G, "Notice and Settlement Administration."

4

## RECITALS

This Settlement Agreement is made for the following purposes and with reference to the following facts:

WHEREAS, Plaintiffs filed a putative class action complaint against Defendants on August 5, 2025, styled *Burns et al. v. NZXT, Inc. & Fragile, Inc.*, Case No. 4:25-cv-06604 (N.D. Cal.), asserting claims for violations of the Racketeer Influenced and Corrupt Organizations Act, Fair Debt Collection Practices Act, California's Rosenthal Fair Debt Collection Practices Act, California's Karnette Rental Purchase Act, California, New York, and Washington consumer protection laws, and breach of contract under California, New York, and Washington law concerning the NZXT Flex Program;

WHEREAS, Plaintiffs brought their claims individually and on behalf of the following proposed classes: (a) "[a]ll persons in the United States who have leased a PC from Defendants or otherwise participated in the Program" ("Nationwide Class"); (b) "[a]ll members of the Nationwide Class who reside in California" ("California Subclass"); (c) "[a]ll members of the Nationwide Class who reside in New York" ("New York Subclass"); (d) "[a]ll members of the Nationwide Class who reside in Washington" ("Washington Subclass"); (e) "[a]ll persons in the United States who leased a PC from Defendants or otherwise participated in the Program and whose payments were at some point delinquent" ("Debt Collection Class"); and (f) "[a]ll members of the Debt Collection Class who reside in California" ("California Debt Collection Subclass");

WHEREAS, the Parties have investigated the facts and analyzed the relevant legal issues regarding the claims and defenses asserted in this Lawsuit, including through an exchange of information to facilitate mediation and settlement, including extensive productions by Defendants of marketing materials, debt collection communications, and data related to the Settlement Class;

WHEREAS, Defendants have not responded to the Complaint and no litigation class has been certified in the Lawsuit;

WHEREAS, the Parties conducted a full-day mediation with Professor Eric Green on November 13, 2025, and continued to negotiate the terms of this Settlement Agreement during the months thereafter;

WHEREAS, the Parties have evaluated the risks, costs, and delays of continued litigation and the uncertainty of recovery.

WHEREAS, Defendants have at all times denied and continue to deny any and all alleged wrongdoing and liability, specifically deny each of Plaintiffs' contentions and claims, and continue to deny that Plaintiffs' claims and allegations would be suitable for class action status. This Settlement Agreement shall not be construed in any fashion as an admission of liability or wrongdoing by Defendants. Plaintiffs do not concede any weakness in their claims;

WHEREAS, the Parties and their counsel engaged in arm's-length negotiations concerning the resolution of the Lawsuit, and each Party entered into this Settlement Agreement after having

5

had a full opportunity to investigate the facts, evaluate the claims and defenses, and consult with counsel;

WHEREAS, Plaintiffs and Class Counsel have concluded, after considering the facts and applicable law, the risks and expense of continued litigation, and the value of the benefits provided under this Settlement Agreement, that the Settlement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Settlement Class;

WHEREAS, to avoid the substantial costs of litigation, and without admitting liability, Defendants and Plaintiffs, individually and as representatives of the Settlement Class as defined above, now wish to settle the Lawsuit in its entirety as to the Plaintiffs, the Settlement Class Members, and Defendants with respect to all claims arising out of facts or claims alleged in the Complaint. The Parties intend this Settlement Agreement to bind Plaintiffs (both as the Class Representatives and individually), Defendants, Class Counsel, and Settlement Class Members.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the Parties agree as follows:

**TERMS**

**A.    Consideration for Settlement**

1.    The Settlement Class Consideration represents the total financial commitment provided to Plaintiffs and the Class under this Settlement Agreement.

2.    Settlement Cash Fund. Within 14 days after an order granting preliminary approval of this Settlement, Defendants shall cause $60,000 of the Settlement Cash Fund to be transferred into an account established by the Settlement Administrator. Within 45 days after an order granting preliminary approval of this Settlement, Defendants shall cause the remainder of the Settlement Cash Fund to be transferred into the account established by the Settlement Administrator. The Settlement Administrator shall agree to hold the Settlement Cash Fund in an interest-bearing account and administer the Settlement Cash Fund, subject to the continuing jurisdiction of the Court and from the earliest possible date, as a qualified settlement fund as defined in Treasury Regulation § 1.468B-1 *et seq*. The Settlement Administrator will thereafter manage distribution of the Settlement Cash Fund. If Final Approval is not granted for any reason, the balance of the Settlement Cash Fund (after payment of costs associated with Notice and administration related to the preliminary and final approval process), plus any interest earned on the Settlement Cash Fund, will be returned to Defendants at an account specified by Defendants' Counsel within 10 days.

3.    Any taxes owed by the Settlement Cash Fund will be paid by the Settlement Administrator out of the Settlement Cash Fund, and interest earned on the balance of the account will accrue to the Settlement Cash Fund.

4.    The Settlement Cash Fund shall be applied as follows:

a. To pay the costs of Notice and the costs of administering the Settlement, as set forth in Section G below;

b. To pay any approved Attorneys' Fees and Expense Payment to Class Counsel and any Service Award to the Class Representatives, as set forth in Section H below;

c. To distribute the Net Settlement Cash Fund to Settlement Class Members, as set forth in Section B, below.

5. No reversion. Subject to B.2 above, no portion of the Net Settlement Cash Fund will revert to Defendants.

6. Settlement Non-Cash Consideration. The value of the Settlement Non-Cash Consideration consisting of Debt Forgiveness and PC Retention, which will be offered to eligible Settlement Class Members, is approximately $2,139,246.94.

a. Settlement Class Members who are more than 90 days delinquent on payments are eligible to receive up to $5,000 in Debt Forgiveness. The total value of Debt Forgiveness is $923,117.92, which will be automatically provided to eligible Settlement Class Members, as set forth in Sections B.7–10.

b. The total value of PCs that will be provided to eligible Settlement Class Members who select the PC Retention option, as set forth in Section B.5, is approximately $1,216,129.02. The total value of the PCs reflects the discounted estimated current value of the PCs to the Settlement Class Members.

7. The Settlement Administrator will determine Settlement Class Members' eligibility for cash payments or PC Retention as set forth in Sections B.4–5.

8. Changes in Business Practices. Defendants represent that they have made enhancements to the NZXT Flex website, signup flow, Subscription Agreement, marketing, and advertising. To that end, the Parties agree that Defendants will continue to implement and/or maintain the following practices through at least December 31, 2027:

a. Taking reasonable commercial measures to prohibit social media influencer advertisement campaigns from making statements that customers have an ownership interest in NZXT Flex PCs;

b. Maintaining the naming convention of NZXT Flex PCs as of December 6, 2024, so that the PCs available for purchase are named "Player" (*e.g.*, "Player One") and the NZXT Flex PCs are named "Flex" (*e.g.*, "Flex One");

c. Disclosing accurate specifications and performance statistics for NZXT Flex PCs on the NZXT Flex Program website and marketing materials;

7

d.     Disclosing in the Subscription Agreement and on the NZXT Flex website that the NZXT Flex Program is not a "rent-to-own program";

e.     Requiring customers who sign up for the NZXT Flex Program to confirm that they understand that the NZXT Flex Program is not rent-to-own before completing their subscription order; and

f.     Defendants will update the NZXT Flex website to prominently disclose that software is available to transfer a subscriber's personal data from an existing NZXT Flex PC to an upgraded NZXT Flex PC at no extra cost.

The Parties acknowledge that NZXT Flex PC model specifications and performance metrics change frequently, and Defendants are using commercially reasonable efforts to display accurate information. In the event that technological or industry developments, or intervening changes in law or business practices, render specific business practice changes obsolete or make compliance by Defendants with them unduly burdensome, Defendants may modify their business practices as necessary to ensure appropriate practices are being followed.

Fragile and NZXT will bear the costs associated with these business practice changes separate and apart from other Settlement benefits.

B.     **The Claim Form and Plan of Allocation**

1.     To obtain a cash payment from the Net Settlement Cash Fund or PC Retention, Settlement Class Members must submit a valid Claim Form (by mail or online), in which they attest to the facts that establish their claim, as set forth below. The Claim Form is designed to provide a streamlined and user-friendly process for Settlement Class Members to obtain relief, and the attestations described below are intended only to confirm eligibility criteria agreed upon by the Parties for purposes of settlement.

2.     Claim Forms will be sent to the Settlement Class as set forth below and each Claim Form shall be pre-populated with, if available: (i) the name of the Claimant; (ii) their NZXT Flex PC model; (iii) the date on which the Claimant entered into a Subscription Agreement; (iv) the Claimant's email address, mailing address, and phone number; (v) whether the Claimant is eligible for a cash payment or PC Retention; and (vi) the attestation options required under Sections B.4–5, below. Settlement Class Members may be eligible for one or more forms of relief under this Settlement, including cash payments, Debt Forgiveness, or PC Retention, subject to the eligibility criteria and interaction of benefits described in this Section.

3.     The Claim Form will call for each Claimant who is eligible for a cash payment to provide their preferred payment method and any additional information for such payment method, and to confirm or update their current contact information.

4.     Settlement Class Members are eligible to receive a cash payment from the Net Settlement Cash Fund if either (i) they are not eligible for Debt Forgiveness or are eligible for Debt Forgiveness in an amount less than $500, as set forth in Section B.9, or (ii) they do not claim the

8

PC Retention option, and (iii) they attest to all statements under at least one of the following Scenarios in the Claim Form:

    a.    Scenario 1

        i.    Claimant viewed disclosures or advertisements that they believed in good faith implied that they would own, or have an ownership interest in, the NZXT Flex PC; and

        ii.    This representation was important in their decision to subscribe to the NZXT Flex Program.

**OR**

    b.    Scenario 2

        i.    Prior to signing up, Claimant viewed product specifications or performance metrics for NZXT Flex PCs on the NZXT Flex website; and

        ii.    These specifications or performance metrics were important in their decision to subscribe to the NZXT Flex Program; and

        iii.    Claimant believes in good faith that they received a NZXT Flex PC that had inferior product specifications and/or performance metrics to those that they viewed and considered when signing up for the NZXT Flex Program.

5.    Settlement Class Members shall be eligible for PC Retention if:

    a.    Their accounts are more than 90 days delinquent as of March 30, 2026 and they signed up for the NZXT Flex Program between October 29, 2024, and June 1, 2025; or

    b.    They entered into NZXT Flex subscriptions on or before December 31, 2023, and have not received an upgraded PC; and

    c.    They attest to both of the following statements in the Claim Form:

        i.    Claimant viewed disclosures or advertisements that they believed in good faith implied that they would own, or have an ownership interest in, the NZXT Flex PC; and

        ii.    These representations were important in their decision to subscribe to the NZXT Flex Program.

6.     Only Settlement Class Members who meet the criteria set forth in Sections B.4–5 shall receive a Claim Form. Settlement Class Members who are eligible to receive a cash payment only shall receive a Claim Form with the attestation required under Section B.4, as reflected in Exhibit D. Settlement Class Members who are eligible for PC Retention pursuant to Section B.5 shall receive a Claim Form that provides (i) the option to elect either to receive a cash payment or PC retention, and (ii) the attestation required under Section B.4 for cash relief and Section B.5(c) for PC retention, as reflected in Exhibit D.

7.     Settlement Class Members shall be eligible for Debt Forgiveness if (i) as of March 30, 2026, they were more than 90 days delinquent in their NZXT Flex subscription payments to Fragile; and/or (ii) they select the PC Retention option.

8.     Settlement Class Members who meet the criteria above in Section B.7 shall have Debt Forgiveness applied automatically, unless the Settlement Class Member excludes themselves from the Settlement pursuant to Section F, below.

9.     If a Settlement Class Member is eligible for Debt Forgiveness but has less than $500 in Covered Debt, they may also be eligible for a cash payment. Such Settlement Class Member's cash payment would be reduced by the amount of debt forgiven.

10.     Settlement Class Members who are eligible for Debt Forgiveness will receive a notice that discloses that they are eligible for Debt Forgiveness and provides a link to view the amount of Debt Forgiveness that they will receive pursuant to Section B.8, above. Settlement Class Members who are eligible for Debt Forgiveness will not receive a claim form unless they have less than $500 in Covered Debt, as set forth in Section B.9, above.

## C.     **Determination and Processing of Claims**

1.     The Settlement Administrator will review all claims to determine their validity. The Settlement Administrator will reject any claim that does not materially comply with the instructions on the Claim Form; is not submitted by a Settlement Class Member; or is duplicative or fraudulent. To the extent any Claim Form contains curable deficiencies, the Settlement Administrator shall inform the Claimant of the deficiency via email or, if no email address is available, by USPS mail, and provide 21 days to cure.

2.     The Net Settlement Cash Fund will be distributed according to the Plan of Allocation. Upon completion of the Claim Period, the Settlement Administrator will calculate and deduct from the Net Settlement Cash Fund an amount sufficient to make Class Payments to each Settlement Class Member eligible for a Class Payment.

3.     Direct payment will be provided via electronic payment to Settlement Class Members who provide valid bank information and by physical check for Settlement Class Members for whom the Settlement Administrator does not have sufficient information to make an electronic payment but has a valid, current mailing address. Settlement Class Members who choose not to provide bank information may elect to receive payment by physical check mailed to their mailing address.

10

4.      For those Settlement Class Members who are eligible to receive a payment from the Net Settlement Cash Fund above and for whom valid, current payment information can be confirmed, a transfer reflecting their payment shall be transmitted to those Settlement Class Members within 30 days after the Effective Date. For those Settlement Class Members eligible to receive Debt Forgiveness or PC Retention, a written confirmation reflecting forgiveness of Covered Debt or the transfer of ownership of their NZXT Flex PC shall be transmitted to the Settlement Class Members within 30 days after the Effective Date. Settlement Class Members who fail to submit a valid Claim Form, and Settlement Class Members who submit an approved Claim Form but for whom valid, current payment information cannot be confirmed will nonetheless be bound by the Settlement Agreement, including the releases set forth in Section I, unless they elect to exclude themselves through the procedure set forth in Section F.

5.      To the extent reasonably and economically feasible, as determined by the Settlement Administrator, the Settlement Administrator shall follow up and communicate with Settlement Class Members who have not cashed their checks or whose ACH transfer failed within 30 days of the payments being provided.

6.      Following distribution of the Settlement Cash Fund, as set forth above, if ACH transfers to Settlement Class Members fail after 90 days or checks attributable to Settlement Class Members remain uncashed 90 days after the Class Payment is distributed pursuant to Sections C.2-5 above, the funds attributable to those individuals shall be used to pay any unanticipated additional costs of Settlement administration, provided that such costs are reasonable and directly related to administration of the Settlement, as set forth in Section G below. Under no circumstances will the Net Settlement Cash Fund revert to Defendants.

7.      In the event that unclaimed funds remain following the final distribution of the Settlement Cash Fund as set forth above in Sections C.2–6, the unclaimed funds shall be paid *pro rata* to eligible Settlement Class Members.

**D.      Obtaining Court Approval of the Settlement Agreement**

1.      <u>Settlement Class</u>. Solely for the purposes of settlement and the proceedings contemplated herein, the Parties stipulate and agree that Plaintiffs will seek certification of the Settlement Class and appointment of Plaintiffs' Counsel as Class Counsel, which Defendants will not oppose. The certification of the Settlement Class shall be binding only with respect to the Settlement set forth in the Settlement Agreement.

2.      Class Counsel will draft the motion requesting issuance of the Preliminary Approval Order and supporting papers and will provide those drafts to Defendants' Counsel at least 10 days before filing. The motion and any supporting papers shall be written in a neutral manner. Defendants will not oppose the motion. Defendants may, however, provide feedback concerning the drafts, and Class Counsel will meet and confer with Defendants' Counsel in good faith regarding Defendants' feedback.

3.      Upon filing of the motion requesting issuance of the Preliminary Approval Order, Defendants will provide timely notice of such motion as required by the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* ("CAFA").

4.      In accordance with the schedule set in the Preliminary Approval Order, Class Counsel will draft the motion requesting final approval of the Settlement, the proposed Final Approval Order, and the proposed Final Judgment, and will provide those drafts and drafts of any other supporting papers to Defendants' Counsel at least 10 days prior to filing. The motion shall be written in a neutral manner. Defendants may provide feedback concerning the motion, and Class Counsel will meet and confer with Defendants' Counsel in good faith regarding Defendants' feedback.

5.      In the event that the Settlement Agreement is not approved, or in the event its approval is conditioned on any modifications (including modifications to the proposed form and method of Notice) that are not acceptable to Defendants, then (a) this Settlement Agreement shall be null and void and of no force and effect, (b) any payments of the Settlement Cash Fund and any and all interest earned thereon, less monies expended toward Settlement administration, shall be returned to Defendants within 10 business days from the date the Settlement Agreement becomes null and void, and (c) any release shall be of no force or effect. In such event, the Lawsuit will revert to the status that existed before the Settlement Agreement's execution date, the Parties shall each be returned to their respective procedural postures so that the Parties may take such litigation steps that they otherwise would have been able to take absent the pendency of this Settlement, and neither the Settlement Agreement nor any facts concerning its negotiation, discussion, terms, or documentation shall be admissible in evidence for any purpose in this Lawsuit or in any other litigation.

E.      **Objections**

1.      Any Settlement Class Member who has not submitted a timely written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, or to the requested Attorneys' Fees and Expense Payment or Service Awards, must comply with the following requirements.

2.      Procedural Requirements. Any objections from Settlement Class Members regarding the proposed Settlement Agreement must be submitted in writing to the Court. If a Settlement Class Member does not submit a timely written objection, the Settlement Class Member will not be able to participate in the Final Approval Hearing.

3.      Deadline. Objections must be submitted by the Objection and Exclusion Deadline.

    a.      If submitted through ECF, objections must be submitted on or before the Objection and Exclusion Deadline by 11:59 p.m. Pacific Time.

    b.      If submitted by U.S. mail, objections must be postmarked by the Objection and Exclusion Deadline. The date of the postmark on the envelope containing the written statement objecting to the Settlement will be the

12

exclusive means used to determine whether an objection and/or intention to appear has been timely submitted. In the event a postmark is illegible or unavailable, the date of mailing will be deemed to be three days prior to the date that the Court posts the objection on the electronic case docket.

4.    <u>Mandatory Content</u>. All objections must be in writing and must:

  a.    Include the full name, address, telephone number, and email address of the objector and any counsel representing the objector;

  b.    Clearly identify the case name and number: *Burns et al. v. NZXT, Inc. & Fragile, Inc.*, Case No. 4:25-cv-06604 (N.D. Cal.);

  c.    Include information sufficient to verify that the objector is a Settlement Class Member;

  d.    State whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

  e.    State the grounds for the objection; and

  f.    Be personally signed and dated by the objector.

5.    Settlement Class Members who fail to submit timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection to the Settlement Agreement and the proposed Settlement by appearing at the Final Approval Hearing, or through appeal, collateral attack, or otherwise.

6.    Any objector who timely submits an objection has the option to appear and request to be heard at the Final Approval Hearing, either in person or through the objector's counsel. Any objector wishing to appear and be heard at the Final Approval Hearing must include a Notice of Intention to Appear in the body of the objector's objection. If an objector makes an objection through an attorney, the objector shall be solely responsible for the objector's attorneys' fees and expenses. Counsel for any objector seeking to appear at the Final Approval Hearing must enter a Notice of Appearance no later than 14 days before that hearing.

7.    At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Settlement Class Members to submit written objections to the Settlement or encourage an appeal from the Court's Final Approval Order.

8.    A Settlement Class Member who objects to the Settlement may also complete the Claim Form, which shall be processed in the same manner as any other Claim Form.

9.    The Class Representatives, Class Counsel, and/or Defendants may file responses to any timely written objections no later than seven (7) days prior to the Final Approval Hearing.

13

**F.    Exclusions**

1.    Requests for Exclusion. The Summary Notice, the Postcard Notice and the Full Class Notice will advise all members of the Settlement Class of their right to exclude themselves from the Settlement. This Settlement Agreement will not bind members of the Settlement Class who exclude themselves from the Settlement.

2.    Requesting Process. To request to be excluded from the Settlement, members of the Settlement Class must timely submit a written request for exclusion. The request for exclusion may be sent either through a portal on the Settlement Website or by U.S. mail to the Settlement Administrator, which will be responsible for receiving and processing requests for exclusion. The request for exclusion must include the Settlement Class member's name, address, telephone number, and email address, if any, be personally signed and dated by the Settlement Class member, and contain a clear request that the individual would like to "opt out" or be excluded, by use of those or other words clearly indicating a desire not to participate in the Settlement. No member of the Settlement Class (or any other person) may request exclusion from the Settlement Class for anyone but himself, herself, or themselves. Mass or class opt-outs, or other purported group opt-outs signed by an attorney or other person or entity in a representative capacity, are not permitted and will not be accepted.

3.    Deadline. To be excluded from the Settlement, the request for exclusion must be postmarked or submitted through the portal by the Objection and Exclusion Deadline.

4.    If a Settlement Class Member submits both a Claim Form and an exclusion request, the Claim Form submission shall take precedence and be considered valid and binding, and the exclusion shall be deemed to have been sent by mistake and rejected.

5.    Effect of Exclusion. Any person who is a member of the Settlement Class and who validly and timely requests exclusion from the Settlement shall not be a Settlement Class Member; shall not be bound by the Settlement Agreement; shall not be eligible to apply for or receive any benefit under the terms of the Settlement Agreement; and shall not be entitled to submit an objection to the Settlement.

6.    Exclusion List. No later than 14 days after the Objection and Exclusion Deadline, the Settlement Administrator will provide Class Counsel and Defendants' Counsel with the number of persons who have timely and validly excluded themselves from the Settlement. If the number of Settlement Class Members who timely and validly request exclusion exceeds the threshold agreed to by the Parties and confidentially submitted to the Court in camera, Defendants, in their sole discretion, may elect to terminate this Settlement by providing written notice to Class Counsel within seven (7) days after receiving the exclusion list, in which case the entire Agreement shall be null and void. Alternatively, Defendants may elect to waive this condition and proceed with the Settlement. Any such waiver by Defendants must be unambiguous and in writing.

14

**G.    Notice and Settlement Administration**

1.    Notice and Settlement administration will be performed by Epiq Global, subject to approval by the Court. The Settlement Administrator will be paid from the Settlement Cash Fund.

2.    The Settlement Administrator shall perform the duties, tasks, and responsibilities associated with providing Notice and administering the Settlement, including the following:

    a.    Preparing and disseminating Notice to the Settlement Class substantially in the forms attached hereto as Exhibits A–D;

    b.    Maintaining the Settlement Website;

    c.    Fielding inquiries about claim procedures;

    d.    Receiving and processing Settlement Class Member claims;

    e.    Determining the eligibility of claims for payment, subject to the rights of Class Counsel and Defendants' Counsel to contest such determinations;

    f.    Keeping track of requests for exclusion and objections to the Settlement, including maintaining the original envelope in which they were mailed (or an electronic copy thereof);

    g.    Delivering to Defendants' Counsel and Class Counsel copies of any requests for exclusion, objections, or, upon request of Defendants' Counsel or Class Counsel, other written or electronic communications from the Settlement Class;

    h.    Making distributions to Settlement Class Members;

    i.    Performing any tax reporting duties required by this Settlement Agreement and federal, state, or local law;

    j.    Maintaining adequate records of all its activities, including the dates of transmission of the Full Class Notice and Summary Notice, returned mail, and other communications and attempted written or electronic communications with the Settlement Class;

    k.    Confirming in writing its completion of the administration of the Settlement; and

    l.    Such other tasks as Defendants' Counsel and Class Counsel mutually agree.

3.    On or before the Data Production Date, Defendants will provide to the Settlement Administrator (but not to Class Counsel) for all Settlement Class Members, where available, the name, last known mailing address, email address, NZXT Flex PC model, the total value of the PCs

15

reflecting an estimated discounted current value of the PCs to the Settlement Class Members, the dates the Settlement Class Member's subscription started and ended, whether the person has their NZXT Flex PC, and relevant payment history as soon as practicable but no later than 30 days after entry of the Preliminary Approval Order. The Settlement Administrator will administer the Notice described herein and in accordance with the Preliminary Approval Order. The Settlement Administrator will keep identities and contact information of members of the Settlement Class strictly confidential, using them only for purposes of administrating this Settlement.

4.      Notice will be provided via email to members of the Settlement Class for whom Defendants have an email address. The contents of the Notice will vary depending on the Settlement Class member's eligibility for relief, as set forth above in Section B. As soon as practicable, but starting no later than 30 days after the Data Production Date, the Settlement Administrator shall send the Summary Notice to all Settlement Class Members for whom Defendants have provided the Settlement Administrator with an email address with a link in the email to the Settlement Website containing the Full Class Notice. In the event that members of the Settlement Class do not receive a Summary Notice by email because a valid email address was not identifiable or an email returned a hard bounce back, the Settlement Administrator will provide supplemental notice in the form of direct mail Postcard Notice to members of the Settlement Class for whom a physical address can be located, containing a QR code and web address to the Settlement website.

5.      The Parties agree upon and will seek Court approval of the following forms and methods of Notice to members of the Settlement Class:

a.      <u>Settlement Website</u>. The Settlement Administrator will establish and maintain a Settlement Website with a mutually acceptable domain name. The Settlement Website will be optimized for viewing on both mobile devices and personal computers. The Settlement Website will include, without limitation, the Full Class Notice in downloadable PDF format, this Settlement Agreement, the Complaint, the Preliminary Approval Order as entered and publicly filed motion papers and declarations in support thereof, Plaintiffs' motion for attorneys' fees and expenses, Plaintiffs' motion for final approval of class action settlement, a set of frequently asked questions, and information on how to object or request exclusion, as well as contact information for Class Counsel and the Settlement Administrator. The Settlement Website will include a readily accessible means for members of the Settlement Class to request a paper claim form and electronically submit payment information. The Settlement Website will explain how Class Payment will be distributed. The Settlement Website shall remain accessible until 30 days after the Settlement Administrator has completed its obligations under this Settlement Agreement.

b.      <u>Toll-Free Number</u>. The Settlement Administrator will establish a toll-free telephone number where members of the Settlement Class can receive instructions for accessing Settlement information and case documents.

16

  c. <u>Summary Notice</u>. The Settlement Administrator will email each member of the Settlement Class for whom Defendants have an email address a copy of the Summary Notice substantially in the form attached hereto as Exhibit C and for each member of the Settlement Class for whom the Settlement Administrator does not have a valid email address, or from whom a non-deliverable or bounce-back email is received, will mail each member of the Settlement Class the Postcard Notice substantially in the form attached hereto as Exhibit B.

  d. <u>Full Class Notice</u>. The Settlement Administrator shall mail or email the Full Class Notice to any Settlement Class Member who requests a copy.

6. Based on information provided by the parties to date, the Settlement Administrator has agreed to perform all Settlement Notice and administration duties required by the Settlement Agreement at a cost not expected to exceed $60,000. This amount shall cover all costs and expenses related to the Settlement administration functions to be performed by the Settlement Administrator, including providing Summary Notice and the Settlement Website, and performing the other administration processes described in this Settlement Agreement. In the event that unanticipated costs and expenses arise in connection with the Notice and/or administration process, such that they exceed the capped amount of $60,000, the Settlement Administrator shall promptly raise the matter with Defendants' Counsel and Class Counsel as soon as practicable after becoming aware of the unanticipated costs and expenses. If both Defendants' Counsel and Class Counsel, acting in good faith, agree that unanticipated costs and expenses justify an increase to the amount payable to the Settlement Administrator in excess of the agreed-upon cap, then the amount in excess of the capped amount shall be paid exclusively from the Settlement Cash Fund by way of any funds represented by checks that remain uncashed after 90 days and ACH transfers that fail after 90 days, as contemplated under Sections C.6–7. Under no circumstances will Defendants be responsible for any costs of Settlement administration in excess of its contribution to the Settlement Cash Fund.

7. The Summary Notice and Settlement Website shall provide information on the procedure by which members of the Settlement Class may request exclusion or submit an objection to the Settlement.

**H. <u>Attorneys' Fees and Expenses and Service Awards</u>**

1. Class Counsel will apply to the Court for a Service Award for Named Plaintiffs Jacob Burns, Jonathan Moulton, and Steven Zou of up to $2,500 each. The Service Awards are not a measure of damages, but instead are solely an award for the Class Representatives' services, time, and effort on behalf of the members of the Settlement Class. Defendants reserve the right to object to or oppose Class Counsel's requests for Service Awards. Service Awards approved by the Court shall be paid from the Settlement Cash Fund. Class Counsel shall provide Form W-9s for the Named Plaintiffs receiving a Service Award, and for Class Counsel, within five (5) days after the Effective Date. The Settlement Administrator shall distribute the Service Awards to accounts specified by Class Counsel no later than 15 days after the later of the Effective Date or the receipt of the Named Plaintiffs' Form W-9s. This Settlement is not conditioned upon the Court awarding

17

the amounts sought by the Class Representatives as a Service Award. If the amounts awarded by the Court are less than what was sought by the Class Representatives, the remaining provisions of this Settlement Agreement shall be binding and effective.

2.      The Parties have reached no agreement on the amount of attorneys' fees and expenses that Class Counsel will seek. While recognizing that the Settlement entitles Class Counsel to apply for reasonable fees and expenses, Defendants reserve the right to object to or oppose Class Counsel's requests for attorneys' fees and expenses. The Settlement Administrator shall pay Class Counsel any Court-approved Attorneys' Fees and Expense Payment no later than 15 days after the later of the Effective Date or the receipt of Class Counsel's Form W-9s. Class Counsel's motion for attorneys' fees and expenses shall be filed at least 20 days before the Objection and Exclusion Deadline and shall be posted on the Settlement Website within three (3) days of it being filed.

3.      In no event shall Defendants have any liability to any Plaintiffs' Counsel, or any other counsel who have represented Named Plaintiffs at any time in this Lawsuit, regarding the allocation of the Attorneys' Fees and Expense Payment among Plaintiffs' Counsel.

4.      Defendants shall not be liable for any additional fees or expenses of Named Plaintiffs or any members of the Settlement Class in connection with the Lawsuit. Class Counsel agree that they will not seek any additional fees or costs from Defendants in connection with the Lawsuit or the Settlement of the Lawsuit beyond the approved Attorneys' Fees and Expense Payment. Defendants expressly agree that they will not seek to recover their Court costs, attorneys' fees, or expenses once the Court enters a Final Approval Order and Final Judgment.

5.      This Settlement is not conditioned upon the Court awarding the amounts sought by Class Counsel as a fee and expense payment. If the amounts awarded by the Court are less than what was sought by Class Counsel, the remaining provisions of this Settlement Agreement shall be binding and effective.

## I.      **Releases**

1.      Except as otherwise set forth herein or as to obligations created hereby, upon the Effective Date, Named Plaintiffs and the Settlement Class, on their own behalf and on behalf of their present and former principals, agents, servants, partners, joint venturers, employees, contractors, predecessors, assigns, heirs, spouses, beneficiaries, executors, administrators, representatives, insurers, underwriters, accountants, and lawyers (collectively, the "Releasing Parties"), separately and collectively, will release and discharge Defendants and each of their present and former principals, agents, servants, partners, joint venturers, directors, officers, managers, employees, contractors, predecessors, successors, assigns, administrators, representatives, parents, shareholders, subsidiaries, affiliates, insurers, underwriters, accountants, and lawyers (collectively, "Defendants' Released Parties"), separately and collectively, from any and all damages, suits, claims, debts, demands, assessments, obligations, liabilities, attorneys' fees, costs, expenses, rights of action and causes of action, of any kind or character whatsoever, whether based on contract (express, implied, or otherwise), statute, or any other theory of recovery, and whether for compensatory or punitive damages, and whether known or unknown, suspected or

unsuspected, occurring before the Effective Date of the Settlement (the "Released Matters") arising out of facts or claims alleged in the Complaint. This release will include claims relating to the Released Matters of which the Releasing Parties are presently unaware or which the Releasing Parties do not presently suspect to exist, which, if known to the Releasing Parties, would materially affect the Releasing Parties' release of Defendants' Released Parties.

2.      The Parties mutually and expressly acknowledge and agree that this Settlement Agreement fully and finally releases and fully resolves the Released Matters in Section I.1 above, including any claims that may not be known. Accordingly, the Parties expressly waive all of their rights under Civil Code § 1542, which provides that:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

3.      The Parties also expressly waive all rights under any other statutes, legal decisions, or common law principles of similar effect to Civil Code § 1542, whether under the law of California or any other jurisdiction.

4.      The Parties are aware that they may hereafter discover facts or circumstances in addition to or different from those they now know or believe to be true with respect to the matters underlying the Lawsuit. In furtherance of the Parties' intent, the release of the Released Matters shall remain in full and complete effect notwithstanding discovery or existence of any additional or different claims or facts.

5.      The amount of the Class Payment pursuant to this Settlement Agreement will be deemed final and conclusive against all Settlement Class Members, who will be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the judgment to be entered in the Lawsuit and the releases provided for herein.

6.      No person shall have any claim of any kind against the Parties, their counsel, or the Settlement Administrator with respect to the matters set forth in Section I hereof, or based on determinations or distributions made substantially in accordance with this Settlement Agreement, the Final Approval Order, the Final Judgment, or further order(s) of the Court.

**J.      Defendants' Denial of Liability; Agreement as Defense in Future Proceedings**

1.      This Settlement Agreement is made in compromise of any and all claims that Plaintiffs have or may have against Defendants related in any way to the Lawsuit, including all claims, allegations, and products discussed therein. This Settlement Agreement shall not be construed in any fashion as an admission of liability or wrongdoing by Defendants. Defendants specifically deny having engaged in any wrongdoing whatsoever. Plaintiffs and their counsel

19

further agree that this Settlement Agreement shall not be admissible in any court or other forum for any purpose other than the enforcement of its terms or if required for legal or accounting purposes.

2.    To the extent permitted by law, neither this Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceeding to establish any liability or admission by Defendants, or to establish the truth of any of the claims or allegations alleged in the Lawsuit.

3.    Neither the Settlement Agreement nor anything that the Parties said or did during the negotiation of the Settlement Agreement shall be construed or used in any manner as an admission of liability or evidence of any Party's fault, liability, or wrongdoing of any kind; nor as an admission of any lack of merit of the causes of action asserted in the Lawsuit.

4.    To the extent permitted by law, the Settlement Agreement may be pleaded or invoked as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding which may be instituted, prosecuted, or attempted for the Released Matters.

## K.    <u>Confidentiality and Non-Disparagement</u>

1.    Plaintiffs agree not to make any public statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that disparage the personal or business reputation, practices, products, or conduct of Defendants or their employees, directors, officers, shareholders, managers, members, agents, affiliates, subsidiaries, parents, corporations, departments, insurers, attorneys, predecessors, successors, or assigns.

2.    The Parties, Class Counsel, and Defendants' Counsel agree that, until publication of this Settlement Agreement by submission to the Court, the terms of this Settlement Agreement and all associated documents and communications, including the negotiations leading to the execution of the Settlement Agreement and all submissions and arguments related to the mediation proceedings, shall not be disclosed by the Parties, Class Counsel, and Defendants' Counsel other than as necessary to finalize the Settlement and Notice or pursuant to the December 1, 2025 term sheet between the Parties memorializing the key provisions of this Settlement. Upon publication of the Settlement Agreement by submission to the Court, the nondisclosure obligations set forth in this paragraph will no longer apply to the four corners of the as-filed Settlement Agreement itself, but such obligations will continue to apply to all other materials and information covered by this paragraph, including but not limited to any negotiations leading to the execution of this Settlement Agreement or related to the mediation.

3.    Any comments made by Defendants' Counsel or Class Counsel concerning the Settlement or the Lawsuit, including in response to inquiries from the press, shall be in accurate, not inflammatory, and not misleading terms to communicate that the Lawsuit has been resolved between the Parties and shall not contain inflammatory language about the Parties or their perceived conduct in the Lawsuit.

4.      Nothing in this Section shall prohibit a Party, Defendants' Counsel, or Class Counsel from making truthful statements as required by applicable laws or regulations.

**L.      <u>Miscellaneous</u>**

1.      <u>Extensions of Time</u>. All time periods and dates described in this Settlement Agreement are subject to the Court's approval. Unless otherwise ordered by the Court, the Parties through their counsel may jointly agree to reasonable extensions of time to carry out any of the provisions of this Settlement Agreement. These time periods and dates may be changed by the Court or the Parties' counsel's written consent without notice to the Settlement Class.

2.      <u>Entire Agreement</u>. This Settlement Agreement contains the entire agreement between the Plaintiffs Jacob Burns, Jonathan Moulton, and Steven Zou, individually and as representatives of the Settlement Class, and Defendants, and constitutes the complete, final, and exclusive embodiment of their agreement with respect to the Lawsuit. This Settlement Agreement is executed without reliance on any promise, representation, or warranty by any Party or any Party's representative other than those identified in this Settlement Agreement.

3.      <u>Applicable Law and Jurisdiction</u>. The laws of the state of California, without regard to its conflict or choice of law provisions, shall govern this Settlement Agreement. The Parties agree that any dispute relating to this Settlement Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the Northern District of California. Each Party submits itself to the exclusive jurisdiction and venue of that court. If any such action is brought, the prevailing party shall be entitled to recover reasonable attorneys' fees.

4.      <u>Gender and Plurals</u>. As used in this Settlement Agreement, the masculine, feminine, or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

5.      <u>Survival of Warranties and Representations</u>. The warranties and representations of this Settlement Agreement are deemed to survive the date of execution hereof.

6.      <u>Cooperation of Parties</u>. The Parties to this Settlement Agreement and their counsel agree to prepare and execute all documents, to seek Court approvals, to defend Court approvals, and to do all things reasonably necessary to complete the Settlement.

7.      <u>Counterparts</u>. This Settlement Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.

8.      <u>Severability</u>. If any provision of this Settlement Agreement is declared by the Court to be invalid, void, or unenforceable, the remaining provisions of this Settlement Agreement will continue in full force and effect, unless the provision declared to be invalid, void, or unenforceable is material, at which point the Parties shall attempt to renegotiate the Settlement Agreement or, if that proves unavailing, either Party can terminate the Settlement Agreement without prejudice to any Party.

9.      <u>Warranties and Representations</u>. Each person executing this Settlement Agreement in a representative capacity represents and warrants that he or she is empowered to do so. This Settlement Agreement is executed voluntarily by each of the Parties without any duress or undue influence on the part, or on behalf, of any of them. The Parties represent and warrant to each other that they have read and fully understand the provisions of this Settlement Agreement and have relied on the advice and representation of legal counsel of their own choosing. Each of the Parties has cooperated in the drafting and preparation of this Settlement Agreement and has been advised by counsel regarding the terms, effects, and consequences of this Settlement Agreement. Accordingly, in any construction or interpretation to be made of this Settlement Agreement, this Settlement Agreement shall not be construed as having been drafted solely by any one or more of the Parties or their counsel. The Settlement Agreement has been, and must be construed to have been, drafted by all Parties and their counsel, so that any rule that construes ambiguities against the drafter will have no force or effect.

10.      <u>Communications</u>. All communications required under this Settlement Agreement shall be in writing and shall be sent overnight and regular mail to the addressees listed below:

       If to Fragile:

            Fragile, Inc.
            75 14th Steet
            San Francisco, California 94103
            Attn: General Counsel

       With a copy to:

            Claudia M. Vetesi
            **MORRISON FOERSTER**
            cvetesi@mofo.com
            425 Market Street
            San Francisco, California 94105
            Telephone: 415.268.7000
            Facsimile: 415.268.5125

       If to NZXT:

            NZXT, Inc.
             605 East Huntington Drive, Suite 213
            Monrovia, California 91016
            Attn: General Counsel

       With a copy to:

            Christopher LaRocco
            **VORYS, SATER, SEYMOUR AND PEASE LLP**
            calarocco@vorys.com

22

52 East Gay Street
Columbus, Ohio 43215
Telephone: 614.464.6400
Facsimile: 614.464.6350

If to Plaintiffs:

Thomas E. Loeser
**COTCHETT, PITRE & MCCARTHY, LLP**
tloeser@cpmlegal.com
840 Malcom Road
Burlingame, California 94010
Telephone: 650.697.6000
Facsimile: 650.697.0577

Mark S. Reich
Michael N. Pollack
Gary Ishimoto
**LEVI & KORSINSKY, LLP**
mreich@zlk.com
33 Whitehall Street, Floor 27
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

11.     Modification and Amendment. This Settlement Agreement may be amended or modified only by a written instrument signed by the Parties' counsel and approved by the Court.

12.     Any and all disputes arising out of or related to the Settlement or this Settlement Agreement must be brought by the Parties and/or each member of the Settlement Class exclusively in this Court. The Parties and each member of the Settlement Class hereby irrevocably submit to the exclusive and continuing jurisdiction of the Court for any suit, action, proceeding, or dispute arising out of or related to the Settlement or this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement to be executed by each Party or its duly authorized representative, as set forth below.

Jonathan Moulton (Mar 31, 2026 12:38:08 EDT)
jwmoulton94@gmail.com

_Jacob Burns_
Jacob Burns (Apr 6, 2026 14:35:20 PDT)

Jacob Burns                                    Jonathan Moulton
Plaintiff                                       Plaintiff

23

_Steven Zou_
_____
Steven Zou
Plaintiff

_Thomas E. Loeser_
_____
Thomas E. Loeser
COTCHETT, PITRE & MCCARTHY, LLP
For Plaintiffs

_Mark Reich_
_____
Mark S. Reich
LEVI & KORSINSKY, LLP
For Plaintiffs

_____
Zachary Wynegar
Chief Executive Officer, Fragile, Inc.

_____
Claudia M. Vetesi
MORRISON & FOERSTER LLP
For Defendant Fragile, Inc.

_____
Johnny Hou
Chief Executive Officer, NZXT, Inc.

_____
Christopher LaRocco
VORYS, SATER, SEYMOUR AND PEASE LLP
For Defendant NZXT, Inc.

24

_____

Steven Zou
Plaintiff


_____

Thomas E. Loeser
COTCHETT, PITRE & MCCARTHY, LLP
For Plaintiffs


_____

Mark S. Reich
LEVI & KORSINSKY, LLP
For Plaintiffs


*Zachary Wynegar*

Zachary Wynegar
Chief Executive Officer, Fragile, Inc.


*Claudia Vetesi*

Claudia M. Vetesi
MORRISON & FOERSTER LLP
For Defendant Fragile, Inc.


_____

Johnny Hou
Chief Executive Officer, NZXT, Inc.


_____

Christopher LaRocco
VORYS, SATER, SEYMOUR AND PEASE LLP
For Defendant NZXT, Inc.


24

Steven Zou
Plaintiff

Thomas E. Loeser
COTCHETT, PITRE & MCCARTHY, LLP
For Plaintiffs

Mark S. Reich
LEVI & KORSINSKY, LLP
For Plaintiffs

Zachary Wynegar
Chief Executive Officer, Fragile, Inc.

Claudia M. Vetesi
MORRISON & FOERSTER LLP
For Defendant Fragile, Inc.

Johnny Hou (Apr 7, 2026 13:40:09 PDT)

Johnny Hou
Chief Executive Officer, NZXT, Inc.

Christopher LaRocco
VORYS, SATER, SEYMOUR AND PEASE LLP
For Defendant NZXT, Inc.

24